## HILL v. KING et al.

The right of the first appropriator of water is equally protected from damage occasioned by subsequent locators above him, as well as below.

The case of the Bear River and Auburn Water and Mining Company v. York Mining Company, applied.

APPEAL from the District Court of the Eleventh Judicial District, County of Placer.

The plaintiffs in this case were the owners of two water-ditches, leading the waters of Indian Cañon to various mining localities, that were constructed in 1852. In 1855, the defendants took possession of certain mining-claims on Indian Cañon, at a point about one mile above plaintiff's dam, and commenced working them, by the sluicing process, and in so doing, washed down large quantities of mud, gravel, and sediment, into the bed of the cañon, which sediment, etc., was carried into plaintiff's ditches by the water used by the defendants in sluicing, and that thereby the ditches of plaintiff were filled up, and also plaintiff's reservoirs, and the water rendered so thick and muddy that it was almost valueless for mining purposes. There was

testimony on the part of the defence, going to show that defendants had worked their claims in a reasonable manner, and had used water coming from another cañon. On the trial, plaintiff asked the Court to instruct the jury, as follows, which being refused, an exception was duly taken:

"That if plaintiff had constructed his ditches, and appropriated the waters of Indian Cañon, and was using said water, for sale for mining purposes, and defendants subsequently located miningclaims, near the bank of said cañon, and above the head of plaintiff's ditches, and in working said claims they, the defendants, occasioned a material and essential injury to the waters of said cañon, so that their value was materially and essentially impaired for the mining uses to which they were being put by plaintiff; such acts are sufficient to entitle the plaintiff to his action. And although defendants may have worked their claims in the most practicable and reasonable manner, and may have done no more damage than it was necessary to do, in order to work their claims, yet the plaintiff is entitled to recover from them to the extent of the damage done by them."

Judgment for defendants. Plaintiff moved for a new trial, which being denied, he appealed.

This case was decided at the July Term of this Court, but was reserved on a petition for a re-hearing.

*Hale & Hillyer* for Appellant.

*Charles A. Tuttle* for Respondents.

At the July Term, MURRAY, C. J., delivered the opinion of the Court—BURNETT, J., concurring.

The only question involved in this case, is, whether the proprietors of a water-ditch can maintain an action against the subsequent locators of mining-claims for a deterioration or diminution of water so appropriated.

It has been repeatedly held by this Court, that as against those locating below the head of a ditch or point where the water is diverted from the stream, the owners of such ditch, if their appropriation of the water was prior to the location of mining or other claims had a superior right, and might protect it by the ordinary remedies known to the law. The only difference between this case, and those heretofore decided, consists in the fact, that the defendants' claims are above and not below the head of the plaintiff's ditch.

It is difficult to discover why the principle which governs one case should not be equally applicable to the other, or why, if the law gives to the first apropriator a right to the use of the water, pure and undiminished, as against the subsequent appropriator

below, he should be allowed by a mere change of position to evade the consequences of the rule, and to place himself in a position which would destroy the rights of the first appropriator.

The right to appropriate the waters of the streams of this State, for mining and other purposes, has been too long settled to admit of any doubt or discussion at this time. Some of the older English authorities held that a right to water might be acquired by a riparian proprietor, by appropriation, and this Court might, with propriety, have maintained the rights of water-companies, on the ground that they were riparian owners ; but it has based this right on the ground that the legislation of the State has given to every one, not only a privilege to work the "gold placers," but also to divert the streams for this and other purposes. The legislation of the State has been held to amount to a *"general license to all,"* (whether properly, is not for me to say, the point having been decided by a majority of the Court against my own opinion—see Conger *v.* Weaver, October 2, 1856,) and when these ditches have been constructed, they are regarded as a franchise or easement, belonging to the proprietors, and are entitled to protection as any other property.

The only test as between parties, where the lands belong to the United States, or this State, is priority of location, and whether a party locates above or below the claim of another, his right depends or originates in appropriation alone; he must take, subject to the higher right of those who were first in point of time to appropriate. If the parties both claimed as riparian proprietors, then each alike would be entitled to the reasonable use of the water for proper purposes. But in such case the *supra riparian proprietor* must so do the same as to do his neighbor the least possible injury, and the general rule is, that each riparian proprietor is entitled to the free use of the waters, pure and undiminished, except the deterioration or diminution be so slight or unimportant as not to materially diminish the quantity or quality.

Testing the case by this rule, it might be asserted with confidence, that the facts of this case warranted a recovery. But when it is taken into consideration that the parties do not claim as owners of the soil, that none of the rules applicable to riparian proprietors apply, and that they both ground their respective rights upon their location; then, the rule which has been so often laid down by this Court, must apply, and he who has first diverted the waters of a stream, and appropriated them to his own use or purposes, must be held entitled to the exclusive enjoyment of the same, pure and undiminished. By this, we do not mean to say that those above him cannot use the water for any purpose; the use must be a reasonable one, and the injury or diminution small or inconsiderable. Any other rule would

destroy this interest entirely, as it would enable any person, by locating above the head of a ditch, to destroy the value and utility of the same, and no man could count with safety upon his enterprise, unless he commenced at the source of the stream. The opposite rule would apply as well to the diversion, as to the deterioration of the water, and after large sums had been expended in constructing a ditch, any one might render the same worthless, by locating above, and asserting his right to divert the water. From these views it results, that the instructions of the Court below were erroneous.

Judgment reversed, and cause remanded.

On the application for a re-hearing,

BURNETT, J.—This case was decided at the last term, and the opinion of the Court was delivered by the late Chief Justice, in which I concurred. Since that opinion was delivered a petition was made for a re-hearing by the counsel of defendants, and the case of the Bear River Company v. The York Company, has been argued and submitted. Upon more full and mature consideration, I think the former opinion of the Court should receive some qualification. My views may be found in my opinion in the case of the Bear River Co. v. The York Co. The petition for a re-hearing should be denied.