ESMOND *et al.* v. CHEW *et als.*

PLAINTIFFS owned certain mining claims in the bed or channel of a stream.
Defendants owned claims in the same stream above and adjoining the claims
of plaintiffs, defendants' claims being located first. Defendants constructed
a flume, running from their own claims to and upon plaintiffs' claims, and
through this flume a large quantity of tailings was deposited on plaintiffs'
claims, to their great damage. The flume was constructed for the purpose of
working defendants' claims; was proper and necessary for that purpose, and
the deposit of tailings was occasioned by the ordinary working of the claims.
The Court instructed the jury, that a person first locating a mining claim in
the bed of a stream is entitled to the channel below as an outlet, and that when
such outlet, from the usual mining operations above, becomes obstructed, he
may open the same; and, if he can do so by no other means; may construct a
flume down the channel as far as necessary, and as far as it can be constructed
without considerable damage to claims subsequently located. *Held,* that the
instruction was wrong; that the defendants were not entitled, as matter of
strict legal right, to an easement upon plaintiffs' claims for the purposes men-
tioned; that the doctrine that, under certain circumstances, one person may
have a right of way by necessity over the land of another, does not apply to
this case; and further, that this Court does not recognize the doctrine, that
one person can go on the land of another and erect thereon buildings or other
structures; and that mining claims stand on the same footing in this respect
as other property; that if the acts of defendants were authorized by any local
custom or regulation, its existence should have been averred and proved.
Each person mining in the same stream is entitled to use, in a proper and reason-
able manner, both the channel of the stream and the water flowing therein.
Where, from the situation of different claims, the working of some will neces-
sarily result in injury to others, if the injury be the natural and necessary con-
sequence of the exercise of this right, it will be *damnum absque injuria,* and
will furnish no cause of action to the party injured. The reasonableness in
the use, is a question for the jury, to be determined by them upon the facts and
circumstances of each particular case.

APPEAL from the Fourteenth District.

To the facts stated in the opinion, add that the tailings were depos-
ited by an extension of defendants' flume upon plaintiffs' ground—that
is to say: defendants, after crossing their own lower line with their
sluice, proceeded, from time to time, as the tailings accumulated at the
end of each piece of flume, to add other pieces, so that, at the com-
mencement of this suit, they had encroached with their sluice over
eight hundred feet upon plaintiffs' claims. For this distance they had
filled up the claims of plaintiffs with tailings to the depth of from

10

twenty-five to thirty feet, and covered up a sluice belonging to plaintiffs, together with a blacksmith shop, tools, etc.

At the time of the location of plaintiffs' claims, and at the date of plaintiffs' purchase, no portion of defendants' sluice had been erected thereon, and no tailings had been deposited.

Defendants had verdict and judgment.    Plaintiffs appeal.

*McConnell & Niles, and A. A. Sargent*, for Appellants.

I.    Mere priority of location of a mining claim on a stream, does not give the right to construct flumes so as to deposit tailings on and destroy claims subsequently located lower down on the stream.    The right to use the channel as an outlet comes from the natural flow of the water, and not from priority of location.    Priority of location gives "superior right" to the mining claim and its natural appurtenances— that is, such appurtenances as pertain by nature to the thing acquired, and form, in law, an essential part of it.    The miner's location gives a full and perfect estate in his own claim, but no right in ground adjoining.    He locates with knowledge that others may locate near by.    To acquire any right in adjacent ground, he must make a special prior appropriation of it—as by locating the line of a tunnel he may suppose necessary to run from some distant point to his claim, or by locating a place of deposit for tailings.    (See *Wolf* v. *St. Louis Independent Water Co.*, 10 Cal. 541; *Jones* v. *Jackson*, 9 Id. 237.)

II.    The doctrine of "necessity" does not aid the prior locator.    This doctrine of right of way which one man has, under certain circumstances, over the land of another, is based on grant or prescription; though it was formerly traced to the "necessity" of the case.    (3 Kent's Com. 424; 6 Mo. 624; 1 Saunders' R. 323, Sergeant Williams' note [6] to *Pomfret* v. *Ricroft*.)    There is no resemblance between the right of way and the right claimed here—the former being a mere occasional passage, the latter a permanent occupation and encumbering of plaintiffs' ground.

Even if "necessity" can give to one man a right in the property of another, it can only be one of that class of rights, the exercise of which is consistent with the full enjoyment by the latter of his own property. Hence, if the right claimed is shown to materially interfere with such enjoyment, or if it in effect involves the dispossession of the owner, or the destruction of his property, it can never be predicated upon the sole ground of necessity.    Such is the case at bar.    For the effect of

Esmond *v.* Chew.

the exercise of the so-called right of the defendants is to absolutely destroy the claims of the plaintiffs, and render them valueless for the future. (*Broadbent* v. *Wilks*, Willes' R. 360 ; Collier on Mines, 80.)

III. The rights of plaintiffs cannot depend on the amount of damage suffered, as is assumed by the instructions of the Court below. Wherever a legal right is infringed, the law gives a remedy, though mere nominal damage be sustained. Whenever, on the other hand, no legal right is impaired, the law gives no relief, however considerable the damage. (Sedg. on Damages, 46 ; 5 Hill, 171 ; *Pastorias* v. *Fisher,* 1 Rawle, 26 ; *Alexander* v. *Kerr,* 2 Id. 83 ; 7 Serg. and Rawle, 11 ; 9 N. H. 88 ; *Sackinder* v. *Beers,* 10 Johns. 24; case of the *Tunbridge Wells Dippers,* 2 Wilson, 414 ; *Wells* v. *Watling,* 2 Wm. Black, 1233 ; *Crooker* v. *Brag,* 10 Wend. 264; 1 Gallison, 433 ; 2 Greenl. Ev. 257–258 ; 4 B. and A. 410 ; 3 Scott's N. R. 390 ; 1 Benj. N. C. 549 ; 24 Wend. 189 ; 10 M. & W. 109 ; 1 Taunton, 121 ; 1 Denio, 548 ; 2 Met. 490 ; 1 Barn. & Ald. 418.)

A miner has a freehold estate in his claims, as against all other parties claiming by the same sort of title. (*Merritt* v. *Judd,* 14 Cal. 59.)

*Henry Meredith and C. W. Hill,* for Respondents.

I. To all mining claims situated upon a water course, which constitutes the only possible outlet or channel for drainage of such claims, is attached the easement of drainage by the bed of the stream below, as appurtenant to such mining claims; and if such channel or outlet becomes, by the acts of subsequent locators above or below on the same water course, obstructed, the prior appropriator may, by such means as will best answer the purpose, open and restore the outlet or passage way so long and so far as may be necessary to the working of such prior located claims.

This easement is founded on a presumed grant of the land. (*Richards* v. *Williams,* 7 Wheat, 59 ; *Van Dyke* v. *Van Buren et al.,* 1 Caines, 84 ; *Melton* v. *Trinity Church,* 3 Serg. & R. 509 ; *Schonder* v. *Bogart et al.,* 2 Wend. 13–60 ; *Merced Mining Co.* v. *Fremont,* 7 Cal. 313.)

The title to land in the mining region being in the miner as against all persons except the Government, he is entitled to all the privileges and incidents which appertain to the soil, subject to the single exception of rights antecedently acquired. (*Crandall et al.* v. *Woods,* 8 Cal. 136 ; *Conger* v. *Weaver,* 6 Id. 548.) The same presumption of grant applies

to such incidents or easements, as to the soil itself. (*Campbell* v. *Wilson*, 3 East. 294; *Tyler* v. *Wilkinson*, 4 Mason, 402; *Bolivar Co.* v. *Neponset Co.*, 16 Pick. 241; *Bliss* v. *Rice et al.*, 17 Id. 23.)

From the user or enjoyment of an easement sufficiently long to mature by prescription, a grant will always be presumed. But in this State, such user may create the presumption of grant at once. Prior possession, or prior user, however short, suffices, because occupancy is the only title claimed by any one, so far as the mineral region is concerned. The possession, too, need only be such as the nature of the thing admits of. For example, a mining claim need not be fenced or ditched; and the owner of a ditch is deemed in possession of the line for excavation and construction from the time he designates it by stakes, or otherwise. (*Hicks* v. *Bell*, 3 Cal. 219; 6 Id. 548.)

Hence, he must be deemed to be in possession of an easement over the bed of the water course, which constitutes the natural and only drain to mining claims above, who has used the same for any length of time as a drain, or channel for discharge, or deposit, for the tailings and flowing matter from his claims, without being required to show that he had given written notice to hold it, and use it as such drain, or without being required to fence it, or flume it. A written notice would indicate no more than the hills or mountains walling in the running stream.

While the stream remained unobstructed, and in its original condition as when the prior comer located his claims, the natural bed conveyed off the refuse matter and proved as efficient a drain as a wooden flume, and therefore no flume along such bed was requisite to the working of such claims, and none required to give possession, or to constitute user of the drain.

*Lex non cogit ad vana* is the maxim which perfects the nature of the possession, and *qui prior est tempore potior est jure* the maxim which confers the sanctity of a grant on mere prior possession.

Again: as water is essential to wash off the soil, the right to the water is appurtenant. And so of the tailings washed off, the right to some spot on which to deposit them, is essential, and hence appurtenant. And as these tailings must flow off, etc., the channel of the stream is natural, necessary, and hence appurtenant. In short, the grant of a parcel of the mining land for mining purposes must carry with it to the grantee, all incidents, appurtenances and easements necessary to the enjoyment of and natural to the land granted.

No separate appropriation, by distinct and independent acts, is requi-

site to acquire these appurtenances, or easements, apparently and necessarily belonging to the claims appropriated. *Cuicunqui aliquis concedit concedere videtur et id sine quo res ipsa esse non potuit*, is a well settled maxim of law. Accordingly, by a deed, or grant of land, or any thing, all the means and privileges necessary to the attainment or enjoyment of the land, or thing granted, pass to the grantee without the words "appurtenances," etc., and to the extent enjoyed by the grantor. (*Kent* v. *Waite*, 10 Pick. 138; *Grant* v. *Chase et al.* 17 Mass. 448; *Rockley* v. *Sprague*, 17 Maine, 281; *Hayord v. Robinson*, 3 Mason, 276; *Whitney* v. *Olney*, Id. 284; *Ferguson* v. *Witsell*, 5 Richar. 280; *Durell* v. *Boisblanc*, 1 La. 407; *Miller* v. *Scofield*, 12 Con. 335; *Blake* v. *Clark*, 3 Greenl. 436; 4 Kent's Com. 440; Broom's Lex. Max. 362; Gale & Wheat. on Eas. 71.)

If the United States Government had, by its agent, taken possession of that particular parcel of land occupied by defendants, and proceeded to mine the same, then there is no question as to the Government's right, or easement, to the flow of the water on to such tract from the land above on the stream, and, by like reason, to its right or easement to have the water flow off upon the land below, through its accustomed and necessary channel.

Now there is no difference in principle between clear water and muddy water—none between water and tailings—both being flowing matter.

If no appropriation has been made by another of anything on such tract, nor of anything on the adjacent or surrounding tract, the first locator finds his claims with full and complete appurtenances, with everything natural and necessary still appurtenant; and in locating, he steps fully into the shoes of the Government.

He can no more be deprived of one of a number of natural and necessary easements than another; can with no more reason be denied, or curtailed in the enjoyment of the easement of drainage over the claims below, than of the flow of the water, etc., to his claims, from above.

Any one subsequently coming and locating above, or below, on such stream, takes the claims which he appropriates just as he finds them, subject to the servitudes or easements before granted to another, the first locator, by the Government, their common grantor. (*Irwin* v. *Phillips*, 3 Cal; *Sims* v. *Smith*, 7 Id. 148.)

II. Admitting that respondents were the prior locators of mining

claims in Missouri cañon—that such claims could only be worked by the enjoyment of an easement or drainage on and down such stream, then when such outlet becomes obstructed by the acts of appellants, the owners of the servient tenement, or by the acts of others, the owner of the dominant tenement can lawfully enter on the lands of the other below, and perform the necessary acts to open, repair, or restore such outlet or drainage. (See authorities before cited, and *Prescott* v. *White,* 21 Pick. 341; *Prescott* v. *Williams,* 5 Metc. 429; *Stiles et al.* v. *Laird et al.,* 5 Cal. 120; Gale & Wheat. Eas. marginal, 324.)

If the right to open the outlet accompanies the right to the outlet itself, then respondents could use a flume or sluice where such was necessary to such opening, or to the substantial enjoyment of the easement.

In opening or repairing the outlet or drain, by constructing a flume as far down as necessary, respondents created no new outlet, but only opened and restored the ancient outlet or drain appurtenant to the claims as owned by the Government, respondents' grantors.

Cope, J. delivered the opinion of the Court—Field, C. J. and Baldwin, J. concurring.

The plaintiffs are the owners of certain mining claims, situated in the bed or channel of a stream known as Missouri cañon. The defendants own claims in the same stream, above and adjoining those of the plaintiffs. The claims of the defendants were first located. The complaint alleges, that the defendants wrongfully constructed a flume upon the claims of the plaintiffs, and deposited thereon a large quantity of tailings from claims above; and that the plaintiffs were greatly injured and damaged thereby. The answer admits the construction of the flume, and the deposit of tailings, but denies that these acts were wrongful; and avers that the flume was constructed by the defendants for the purpose of working their claims; that its construction was proper and necessary for that purpose, and that the deposit of tailings was occasioned by the ordinary working of these claims. There is no dispute as to the facts.

On the trial of the case, the Court instructed the jury, among other things, that a person first locating a mining claim in the bed of a stream, is entitled to the channel below as an outlet; and that when such outlet, from the usual mining operations above, becomes obstructed, he may open the same, and, if he can do so by no other means, may con-

struct a flume down the channel as far as necessary, and as far as the same can be constructed without *considerable* damage to claims subsequently located.

The real question in the case is, whether the defendants, as a matter of strict legal right, are entitled to an easement upon the plaintiffs' claims, for the purposes mentioned in the answer.  Upon this question we readily confess that our convictions are decidedly adverse to the position of the defendants.  We do not see upon what legal foundation the right claimed by them can possibly rest.  As a proposition of law, the right of one person for his own advantage to enter upon and use the property of another, without his consent, cannot be maintained.  The doctrine of necessity, invoked by the defendants, and relied upon by the Court below, has no application.  Under certain circumstances a person may have a right of way, by necessity, over the land of another ; but the doctrine that one person may have a right, by necessity, to go upon the land of another, and erect thereon buildings or other structures, we are by no means prepared to recognize.  The fact that the land is a mining claim can make no difference, for the principle is the same, whatever is the character of the property.  If the acts of the defendants were authorized by any local custom or regulation, its existence should have been averred and proved.

Our opinion is, that the acts complained of are without sufficient justification ; and that the Court erred in its view of the law, as given to the jury.  The defendants had unquestionably the right to work their claims, but the same right belonged to the owners of every other claim on the stream.  The channel of the stream was the natural and necessary outlet for all, and no one had, as against the others, the right to its exclusive use for that purpose.  The recognition of such a right would be in violation of every principle of legal justice.  The true rule is, that each person mining in the same stream, is entitled to use, in a proper and reasonable manner, both the channel of the stream, and the water flowing therein ; and where, from the situation of different claims, the working of some will necessarily result in injury to others, if the injury be the natural and necessary consequence of the exercise of this right, it will be *damnum absque injuria,* and will furnish no cause of action to the party injured.  The reasonableness of the use is a question for the jury, to be determined by them upon the facts and circumstances of each particular case.

Judgment reversed, and cause remanded for a new trial.