LINCOLN et al., appellants, *v.* RODGERS et al., respondents.

PRACTICE — *new trial* — *not granted if verdict has any support.* A new trial will not be granted if there is some testimony to support the verdict, although there is a preponderance of evidence against it.

MINING CLAIMS — *damages by custom* — *free tailings.* The first locators of mining ground have no right, by custom or otherwise, to allow tailings to run free in the gulch, and render valueless the mining claims of subsequent locators below them.

MINING CLAIMS — *no remedy for necessary injuries in working by first locators.* The first locators of mining ground can work it with reasonable care and diligence, and the necessary injuries resulting to subsequent locators would be *damnum absque injuria.*

MINING CLAIMS — *boundaries of ground for tailings* — *custom* — *free tailings.* The boundaries of ground for the deposit of tailings must be distinctly defined by persons locating it, so that subsequent locators may know what ground is vacant. The custom of free tailings conflicts with this rule, and the defining of such boundaries would be useless.

*Appeal from the Second District, Deer Lodge County.*

THIS action was commenced by Lincoln and another in the district court, in April, 1869, to recover $3,000 damages, and enjoin defendants from washing down on plaintiffs' mining claims, tailings, gravel and sand. The cause was tried at the September term, 1869, by a jury that rendered a general verdict for defendants, and, also, ten special findings.

The court, KNOWLES, J., refused the motion for a new trial, and plaintiffs appealed.

The facts are stated in the opinion.

CLAGETT & DIXON, for appellants.

The evidence was insufficient to justify the verdict and special findings. The deposit of tailings, by respondents, the injury to appellants' ground, and the amount of damages sustained by appellants, were proved and not disputed. The testimony did not show any custom to allow tailings to run free down the gulch. Civil Prac. Act, § 193; *Minturn v. Burr,* 20 Cal. 48; *Lyle v. Rollins,* 25 id. 440; *Carpentier v. Gardiner,* 29 id. 160; 1 Gra. & W. on New Trials, 367; 3 id. 1204, 1207; *Esmond v. Chew,* 15 id. 137.

The court erred in refusing to give instructions asked for by appellants.

The respondents having assisted in and consented to the organization of Lincoln district, and the enactment of its laws, and having availed themselves of such laws and located their ground anew under these laws, which gave them more ground than they could hold before, thereby accepted and were bound by these laws. The respondents were confined, by their new location, to three hundred feet of ground for dump, if they chose to locate it. Respondents could not, while locating under and claiming the benefit of these new laws, claim other and different rights under a former location and previous laws.

Appellants hold that no mining law or custom can authorize a trespass on the property of another, especially where such trespass might lead to the entire destruction of the property. Such a custom would be in conflict with the laws of the Territory, and void. *Esmond* v. *Chew*, 15 Cal. 137.

WOOLFOLK & TOOLE, and MAYHEW & McMURTRY, for respondents.

The evidence was conflicting, and the jury determined its weight. *Kile* v. *Tubbs*, 32 Cal. 333.

The respondents were using the ground as a dump when appellants located it. They so located, with full notice of respondents' rights. It was the custom of the miners to let such tailings, as the water of the gulch would carry, run free down the gulch. This custom was in force when appellants located their ground. The position that respondents were only entitled to three hundred feet for dump, is immaterial, as the custom was as above stated. Respondents were running their tailings upon and through appellants' ground, when appellants pre-empted it. Such use was necessary and beneficial to respondents, who should be protected in the advantage of their prior location. *Logan* v. *Driscoll*, 19 Cal. 623.

The instructions of the court were correct. The jury did

not find a single issue for appellants, and it devolved on them to make out their case.

Under our statute, the miners of a district make such laws as they deem expedient, and such laws have full force, if not in conflict with the law of the Territory. Acts 1865, 169, § 634.

The appellants were not entitled to any damages, and showed no right to recover them. The respondents' mining ground would be rendered useless, without permitting their tailings to run in accordance with the custom of the district.

SYMES, J. This was an action brought by plaintiffs, alleging that they were and had been for two years the owners of certain mining ground in Lincoln district, Carpenter's gulch, Deer Lodge county, Montana; to wit: Six claims next below discovery; that said mining ground had been located for the purpose of mining the same by bed rock flumes; that they had been continually working and mining the same when practicable since location, and had constructed a bed rock flume and a reservoir for harboring the water. Further, that defendants have been for more than a year mining on ground in said gulch, six hundred or eight hundred feet above the plaintiffs, and have been using the water of said gulch through a flume; that in 1868 and 1869, while plaintiffs were in possession of their ground and flume, and waters of gulch, defendants wrongfully and unlawfully washed and run large quantities of rock, tailings, gravel and sediment on to the plaintiffs' ground and in and upon their reservoir, and covered up and obstructed their reservoir; that plaintiffs had been prevented from mining their ground and had sustained damage to the amount of $300, and demanded judgment and an injunction.

Defendants answered, denying the allegations of the plaintiffs' complaint, and alleged that they had located their mining ground above prior to plaintiffs' location, and that plaintiffs took their mining ground subject to defendants' prior right to let their tailings, etc., run down the natural channel of the gulch. And alleged that there was a cus-

tom in the district where said mining ground was situate, that gave those above in the gulch the right to let their tailings run down the natural channel of the gulch without cribbing the same ; and that plaintiffs located their mining ground subject to this mining custom.

The cause was tried at the September term of the Deer Lodge county district court, judgment rendered for defendants, motion for new trial overruled, and case appealed from order overruling motion for new trial. The facts of the case quite fully appear in statement on motion for new trial and special findings submitted to the jury.

We are asked to reverse the judgment and grant a new trial, first, because the verdict is contrary to law and the evidence ; and second, because the court erred in giving and refusing certain instructions.

The jury, in addition to their general verdict for defendants, found, in their special verdict, that defendants located and owned their mining ground above in the gulch prior to plaintiffs' location below and adjoining ; that defendants owned three hundred feet of the ground next below the upper line of number one, claimed by plaintiffs, for the purpose of depositing their tailings thereon, and were actually using the same for such purpose when plaintiffs located it with their other ground below ; that it was the custom and usage of miners in the mining district where plaintiffs' mining ground was situate, to let so much of the tailings and sediment, as the natural waters of the gulch would carry, flow free, at the time plaintiffs located their mining ground ; and that the alleged damage accrued by reason of defendants letting their tailings and sediment so to run free.

There were other special findings immaterial to the main issues.

The court below states, in reasons for overruling motion for new trial, that it thinks the weight of evidence was contrary to some of the special findings ; but that there was some evidence on both sides, as appears in the statement, and therefore the verdict cannot be set aside. We think this the correct doctrine ; that although the preponderance

of evidence may have been in favor of the plaintiffs on the two main issues, *viz. :* Whether defendants owned three hundred feet below the upper line of claim number one, for, in miner's parlance, dump ; and whether there was a custom to let tailings run free ; still, as there was some considerable evidence on both sides, the judgment cannot be reversed for that reason.

This brings us to the consideration and necessary decision of a question, which, after twenty years of mining litigation in California, has never been fairly met and decided, viz. : how far a mining custom to let tailings run free down a gulch without any let or hindrance (such as was found by the jury to exist in this case), can interfere with and destroy the mining operations and ground of persons locating for mining purposes in the same gulch below and after such custom or regulation has been established.

It plainly appears that, if defendants' tailings are allowed to run free, in accordance with said custom, it will entirely destroy plaintiff's mining ground, and render his mining operations valueless. Will the law allow such a custom to take away and destroy the property rights of plaintiffs, acquired as aforesaid, and will defendants' prior location be a good defense under the maxim *qui prior est in tempore potior est in jure ?*

The case of *Esmond et al.* v. *Chew et al.*, 15 Cal. 137, is a case in point on question of first in time, first in right, and establishes the doctrine that a person locating ground on the bed of a stream, or in a gulch, prior to one locating ground below, does not acquire the right, by such prior location, to go on to and construct a tail race on subsequently located ground below, and cannot, as matter of strict legal right, therefore, allow tailings and sediment to run free, to the destruction of the mining property of junior locators below. Where the useful working of the claim above, with reasonable care and diligence, will necessarily work some injury to the claim below, it would be *damnum absque injuria ;* but this would be a question for the jury under the instructions of the court, and cannot avail defendants

in this case, as it appears that what they justify would entirely destroy the mining property of plaintiffs, and make it impossible for them to work their claims. But this case does not reach the question, how far a local mining custom could authorize a destruction of mining operations below. But the court say that, if the damage was justified by a local custom or regulation, its existence should have been alleged and proved; perhaps intimating that such a custom would justify such damage. The other case cited (*Logan* v. *Driscoll*), where the plaintiff owned mining ground below, and defendants located above, after plaintiff, it was held that the maxim first in time, first in right, applied to this case, and defendant was enjoined from allowing tailings to run down to the damage of plaintiff, defendant being junior locator.

The court below instructed the jury in accordance with the above cited decisions, so far as applicable; but also gave instruction to the effect that, if the defendants proved a custom allowing tailings to run free, that would be a good defense or justification for any damage resulting to plaintiffs' mining operations below; and the case was tried, and judgment rendered on this theory. We think this theory cannot be maintained in accordance with strict legal principle. To support this doctrine of free tailings by custom, would be to allow a few miners or flume companies to go into the head of a mining gulch and prevent, perhaps, miles of valuable mining ground below them from being taken up and developed; because no one could tell, if they located below, how soon their ground would be entirely covered up and destroyed, under this custom of free tailings. Such a mining custom would be in contravention of the leading principle that customs must not be inconsistent with the full and rapid development of all the mining resources of the country; for the miners of a district might as well take possession of a large gulch, and establish a regulation that each claim should be five thousand feet up and down the gulch in size, as to put a few flumes in at the head of a gulch, and, under the contended for custom of free tailings,

not allow them to be cribbed, and thereby prevent rich mining ground, for miles below, from ever being worked or developed.

We are not, by this decision, restricting any of those mining rights which may be acquired by prior location, or as appurtenant to mining ground, nor contravening the doctrine, that the miners may establish such customs and regulations, not inconsistent with the laws of congress and the Territory, as to them may seem just and necessary ; but only that the doctrine of free tailings cannot be, abstractly, and without restriction, maintained. Where persons locate ground for the purpose of constructing a flume, they can locate any number of feet, not in violation of the mining regulations of the district, and if there are no regulations not exceeding a reasonable amount for the deposit of tailings, or dump, but the boundaries of the same must be marked in accordance with the regulations of the district ; or, if there are more, by fixing the boundaries by such physical marks as will advertise the precise ground claimed for mining and dump ; so that those wishing to locate thereafter may know what is vacant. *English* v. *Johnson*, 17 Cal. 117. And there are other appurtenant rights acquired and necessarily attaching to the claim, defined by the mining law, and the peculiar circumstances surrounding such case. To allow the custom of free tailings to govern without restriction, would be in opposition to this principle, that parties locating are bound to mark the boundaries of their claims, which shall be notice of the extent of the mining ground and rights acquired to subsequent locators, for all the first locators would have to do, would be to pass the mining custom of "free tailings ; " then defining boundaries by physical marks would be useless, because if any one located below, they could run their tailings on to, and render their ground valueless, and this custom unrestricted would prevent junior locators from cribbing or stopping the tailings from above in any way.

There was evidence in the case to show that if the tailings were not allowed to run free, the defendant's mining opera-

tions would be rendered useless, and would be destroyed; but the jury found the defendants owned three hundred feet of the ground claimed by plaintiffs, below their own mining ground, for deposit of tailings. The evidence and peculiar circumstances of the case might justify defendants in the reasonable prosecution of their mining operations, under prior location, in working some necessary injury to plaintiffs, which would be *damnum absque injuria*. But a mining custom which would allow the total destruction of a junior locator's mining operations, in a gulch below prior locators, on ground which was vacant, cannot be maintained under any statute or common mining law with which we are acquainted. Therefore, the court erred in instructing the jury that the defendants could justify the destruction of plaintiffs' mining operations, by proving a custom or regulation to let tailings run free.

Judgment is reversed and cause remanded for a new trial.

*Exceptions sustained.*