[Civ. No. 3028.   Second Appellate District, Division Two.—December 17, 1919.]

## J. W. DRIPPS, Appellant, v. THE ALLISON'S MINES COMPANY (a Corporation), et al., Respondents.

[1] MINING LAW—DAMAGE BY TAILINGS TO LOWER CLAIM—RIGHT OF PRIOR UPPER LOCATOR.—The first locator on mining ground has no right, by custom or otherwise, to allow tailings to run free in the gulch and render valueless the mining claims of subsequent locators below him.

[2] ID.—CARE EXERCISED BY UPPER LOCATOR IMMATERIAL—LIABILITY FOR INJURY.—Where the land of the lower locator is actually invaded by "tailings," "slickens," or other material from the claim of the upper locator, it makes no difference how carefully the latter may have worked his mine. His liability does not depend upon negligence in the construction or use of his property. If his work in fact injures the property of another he is none the less liable, be he ever so cautious or careful to avoid injurious consequences.

[3] ID.—LIABILITY FROM STONES ROLLING FROM TRAIL.—Such rule respecting the liability of the upper locator for tailings, etc., carried down upon the claim of a lower locator applies with equal force to rocks and boulders caused to roll down the steep sides of a gulch by reason of the construction of a trail by the upper locator around the claim of the lower locator, thereby endangering the life of any person who might attempt to work the claim, and seriously impair, if not utterly destroy, its value for mining purposes.

[4] ID.—RIGHT TO DIVERT WATERS—PRIORITY—REASONABLENESS OF USE —QUESTION OF FACT FOR JURY.—The right to mine on public lands and the right to divert and use for mining purposes the waters of a stream that runs wholly through the public domain stand upon an equal footing, subject to the principle *qui prior est tempore, potior est jure;* but the upper locator, though subsequent in time, and though, for that reason, his is a subordinate right, may, nevertheless, make reasonable use of the waters of the stream, the reasonableness to be determined by the jury upon the facts and circumstances of each particular case.

[5] Id.—Location of Claim—Compliance With Revised Statutes— Conformity to Public Survey.—Locations of mining claims upon unsurveyed lands, as well as those upon surveyed lands, are within the purview of section 2331 of the United States Revised Statutes. If the lands have been surveyed by the government, the location, in its exterior limits, must conform to the public survey, if reasonably practicable; and if the land be unsurveyed, the location, as reasonably as practicable, must be rectangular in form, with east-and-west and north-and-south boundary lines, and otherwise approximating conformity to the public survey system within the limits of practicability.

[6] Id.—Conformity With Prior Surrounding Locations.—The conformity requirement of the federal statute does not require a placer locator to conform his location to legal subdivisions of the public surveys and the rectangular subdivisions thereof, when such requirement would compel him to place his lines on other prior located claims. It is not essential that his claim conform with the United States system of public land surveys when it is surrounded by prior locations.

[7] Id.—Making of Survey and Plat — Not Essential to Valid Location.—The plat and survey referred to in the provision of section 2331 of the Revised Statutes that "where placer claims cannot be conformed to legal subdivisions, survey and plat shall be made as on unsurveyed lands," are the plat and survey to be made and filed when the application for a patent is made, and are not essential to the perfecting of a valid location.

[8] Id.—Failure to Record Location Notice—Forfeiture of Claim. Notwithstanding the failure of a locator to record the location notice within the thirty days prescribed by section 1426d of the Civil Code, he does not for that reason forfeit his mining claim or his possessory right thereto, but has such right to the ground monumented and staked by him as entitles him to relief against any unlawful trespass thereon.

[9] Id.—Actual Notice of Possession Under Claim as Locator— Superiority of Location.—Notwithstanding the failure of a locator to record his location notice within the time prescribed by section 1426d of the Civil Code, he acquires not only a right of possession which he does not forfeit merely because of his neglect to make a time record, but a location that, if imperfect, will, nevertheless, be superior to any location on the same ground that persons having actual notice that he is in possession of such claim, asserting a right thereto as a locator thereof under the United States mining laws, might subsequently attempt to make.

APPEAL from a judgment of the Superior Court of Los Angeles County. E. T. Zook, Judge Presiding. Reversed.

The facts are stated in the opinion of the court.

Houge & Hazen for Appellant.

H. F. Bridges for Respondents.

FINLAYSON, P. J.—Plaintiff sues to recover damages for certain acts of trespass alleged to have been committed by defendants to the injury of plaintiff's placer mining claim, and to enjoin further continuance of the acts. At the conclusion of plaintiff's evidence the court gave judgment for defendants on the merits without requiring the introduction of any evidence on their part. From this judgment plaintiff appeals.

The complaint alleges that plaintiff is the owner of a placer mining claim in Laurel Gulch, Los Angeles County, containing twenty acres, in the form of a parallelogram, eighty by forty rods, with its side lines running northerly and southerly and substantially parallel with the direction of the gulch and likewise with the stream that flows therein; that after plaintiff located his claim, defendants located their mining claim to the north of plaintiff's and farther up the gulch; that in working their mill defendants caused large quantities of "tailings" to be carried down to and deposited upon plaintiff's claim, to a depth of from several inches to several feet; that subsequent to plaintiff's location defendants constructed a trail or road around and above plaintiff's claim, and that, by reason thereof, they have caused rocks and boulders to roll down upon his claim, thus making it dangerous for him to work thereon; that a stream of water, flowing southerly down and through the gulch, passes through the claims of both plaintiff and defendants; that the use of the water in the stream is necessary to the working of plaintiff's claim; that by permitting the tailings from their mill to enter into and flow down the stream, defendants have polluted its waters, so that it has become muddy and unfit for plaintiff's mining operations; and that, unless enjoined, the acts thus complained of will compel plaintiff permanently to discontinue working his mine.

The court below found against each of these alleged acts of trespass, notwithstanding there was ample evidence, un-

contradicted, to support the allegations of the complaint with regard to each act complained of. For this reason the judgment must be reversed, unless, as contended by respondents, plaintiff failed to prove a valid mining location, which seems to be the principal question on this appeal.

Plaintiff and his witnesses testified that "tailings" from defendants' mill accumulated on plaintiff's land along the stream the entire length of his claim, and from six inches to two feet in depth; that large rocks and boulders, aggregating many tons, rolled down the steep sides of the gulch; that this was caused by the trail built and used by defendants; that it would cost twenty-five thousand dollars to remove the rocks, and several thousand dollars to remove the tailings; that it is not practicable to work plaintiff's claim without first removing the rocks and tailings; that the water in the stream is made "muddy and riley" by the tailings from defendants' mill, and that this "gums up the riffles," so that his placer mining claim cannot be worked profitably.

We think the uncontradicted evidence amply sufficient to show that the tailings which defendants permitted to run down the gulch rendered plaintiff's mining claim—assuming, for the present, that his was a valid location—valueless for mining purposes—the only purpose for which it had any value. This being so, plaintiff, if his location is valid, would be entitled to relief even though it should appear that defendants' location was prior to his. [1] It is well settled that the first locator on mining ground has no right, by custom or otherwise, to allow tailings to run free in the gulch and render valueless the mining claims of subsequent locators below him. (*Lincoln* v. *Rodgers,* 1 Mont. 217; *Fitzpatrick* v. *Montgomery,* 20 Mont. 181, [63 Am. St. Rep. 622, 50 Pac. 416]; *Esmond* v. *Chew,* 15 Cal. 137; *Hobbs* v. *Amador etc. Co.,* 66 Cal. 161, [4 Pac. 1147]; *Robinson* v. *Black Diamond Co.,* 57 Cal. 412, [40 Am. Rep. 118]; Lindley on Mines, 3d ed., sec. 843.) [2] Where the land of the lower locator is actually invaded by "tailings," "slickens," or other material from the claim of the upper locator, it makes no difference how carefully the latter may have worked his mine. His liability does not depend upon negligence in the construction or use of his property. If his work in fact injures the property of another, he is none the less liable, be he ever so cautions or careful to avoid

injurious consequences. (*Hill* v. *Smith*, 27 Cal. 476; *Lavaroni* v. *Miller*, 34 Cal. 231, [91 Am. Dec. 692]; *Salstrom* v. *Orleans etc. Co.*, 153 Cal. 551, [96 Pac. 292].) **[3]** What we have said respecting defendants' liability for the tailings carried down upon plaintiff's claim applies with equal force to the rocks and boulders that were caused to roll down the steep sides of the gulch by reason of the trail constructed by defendants, thereby endangering the life of any person who might attempt to work the claim, and seriously impair, if not utterly destroy, its value for mining purposes. As said in *Pumpelly* v. *Green Bay Co.*, 13 Wall. 166, [20 L. Ed. 557]: "Where real estate is actually invaded by superinduced additions of water, earth, sand, or other material, so as to effectually destroy or impair its usefulness, it is a taking within the meaning of the constitution." **[4]** As to the water in the stream, which plaintiff claims was polluted by the tailings and debris from defendants' mill, the rule whereby the rights of the respective parties should be determined is this: The right to mine on public lands and the right to divert and use for mining purposes the waters of a stream that runs wholly through the public domain stand upon an equal footing, subject to the principle *qui prior est tempore, potior est jure.* Some deterioration in the quality of the water necessarily results from carrying on mining operations on a running stream. A prior locator cannot insist that the stream above him shall not be used by subsequent locators or appropriators for mining purposes, and that the water shall flow to his claim in a state of absolute purity. While the subsequent locator will not be permitted so to conduct his operations as to unreasonably interfere with the fair enjoyment of the stream by the prior locator, or to destroy or substantially injure the latter's superior rights as a prior locator, nevertheless, the law recognizes the necessity for some deterioration, which, within reasonable limits, is *damnum absque injuria.* Any other rule might involve an absolute prohibition of the use of all the water of a stream above a prior location in order to preserve the quality of a small portion taken therefrom. The reasonableness of the use is a question for the jury, to be determined by them upon the facts and circumstances of each particular case. The essence of the rule is tersely expressed in the homely maxim of the early miners' law, "Live and let

live." (*Esmond* v. *Chew, supra; Bear River etc. Co.* v. *New York M. Co.,* 8 Cal. 327, [68 Am. Dec. 325]; *Hill* v. *King,* 8 Cal. 336; *Hill* v. *Smith, supra*; *Provolt* v. *Bailey,* 62 Or. 58, [121 Pac. 961]; *Atchison* v. *Peterson,* 20 Wall. 507, [22 L. Ed. 414, see, also, Rose's U. S. Notes]; *Arizona Copper Co.* v. *Gillespie,* 12 Ariz. 190, [100 Pac. 465]; affirmed, 230 U. S. 46, [57 L. Ed. 1384, 33 Sup. Ct. Rep. 1004]; Lindley on Mines, 3d ed., sec. 841.) In this state the location and possession of a mining claim draws to itself the right to a reasonable use, for mining purposes, of the waters of a stream flowing through the claim. Parties holding possessory rights in separate parcels of land, title being in the United States, have the rights of riparian owners in the waters of any stream flowing naturally over both parcels. A locator on public lands with a view of appropriation becomes the absolute owner against everyone but the government, and is entitled to all the incidents which appertain to the soil except rights antecedently acquired. As between locators of mining claims on a stream flowing through the public domain, the rule, *qui prior est tempore, potior est jure,* is applicable. (*Leigh* v. *Independent Ditch Co.,* 8 Cal. 323; *Crandall* v. *Woods,* 8 Cal. 136); but the upper locator, though subsequent in time, and though, for that reason, his is a subordinate right, may nevertheless make reasonable use of the waters of the stream, the reasonableness to be determined by the jury upon the facts and circumstances of each particular case.

We think the evidence amply sufficient to support the allegation as to the injurious invasion of plaintiff's claim by the tailings from defendants' mill, the pollution of the stream thereby, and the injurious effects of the rocks that were caused to roll down on plaintiff's claim by reason of the construction of defendants' mountain trail, and that, as to these acts of alleged trespass, the findings should have been in plaintiff's favor. We think, therefore, that the court erred in finding against plaintiff's allegations respecting the acts of trespass, and that such error is cause for reversal, unless, as claimed by respondents, plaintiff has no valid mining claim.

Respondents, ignoring the points specifically urged by appellant as grounds for reversal, have pivoted their whole case on this appeal upon the one question: Was plaintiff's loca-

tion a valid mining location? Their contention that plaintiff has no right or title to the land which he claims has been injured by defendants' acts is grounded on two propositions: (1) That plaintiff did not locate his claim in conformity with the United States system of public land surveys; and (2) That his location notice was not recorded in the county recorder's office within thirty days after its posting, as required by section 1426d of our Civil Code.

[5]   Section 2331 of the Revised Statutes, [6 Fed. Stats. Ann., 2d ed., p. 579; U. S. Comp Stats., sec. 4630], provides that "all placer mining claims . . . shall conform as near as practicable with the United States system of public land surveys and the rectangular subdivisions of such surveys." It is the policy of the government to have mining locations in compact form. No shoestring claim will receive the government's sanction. Locations upon unsurveyed lands, as well as those upon surveyed lands, are within the perview of the statute. If the lands have been surveyed by the government, the location, in its exterior limits, must conform to the public survey, if reasonably practicable; if the land be unsurveyed, the location, as reasonably as practicable, must be rectangular in form, with east-and-west and north-and-south boundary lines, and otherwise approximating conformity to the public survey system within the limits of practicability. (Wood Placer M. Co., 32 Land Dec. 364; Snow Flake Placer, 37 Land Dec. 250.) The evidence does not disclose whether the land was publicly surveyed land or not. During the trial counsel for defendants sought to evoke from plaintiff's counsel an admission that the land had been surveyed, but the latter warily evaded making any such admission. If the land was not publicly surveyed land, we are not prepared to say that the location did not conform to the United States system of public land surveys to the extent required by the statute where the land is unsurveyed. In monumenting and staking his claim, plaintiff evidently endeavored to locate a piece of land that should include the exact twenty-acre unit of location permitted by Congress, and be rectangular in form, with side lines eighty rods in length, running north and south, and end lines forty rods in length, extending east and west. But regardless of this, there is one complete answer to defendants' objection, and that is the fact that,

according to the admission of the pleadings, plaintiff's location was surrounded on all sides by prior claims. It is alleged in the complaint, and not denied by the answer, that "at all times herein mentioned"—and that, according to paragraph VIII of the complaint, includes the time when, in August, 1913, plaintiff "established himself" upon his claim—defendants "have been the owners of, interested in . . . and in possession and control of certain real property and mining claims adjoining the above described mining claim of plaintiff on the northerly, easterly, southerly and westerly sides thereof." This, we think, is tantamount to an allegation, admitted by the answer, that, at the time when plaintiff located his claim, it was surrounded on all sides by prior claims. [6] The conformity requirement of the federal statute does not require a placer locator to conform his location to legal subdivisions of the public surveys and the rectangular subdivisions thereof, when such requirement would compel him to place his lines on other prior located claims. It is not, therefore, essential that his claim conform with the United States system of public land surveys when it is surrounded by prior locations. Conformity with the United States public survey system would not be reasonably practicable in the location of public land thus surrounded by prior claims; and whether the claim be on surveyed or unsurveyed lands, if it be surrounded by such prior claims its boundaries may conform thereto regardless of the irregularity of the form thus produced. (*Snow Flake Placer, supra;* Lindley on Mines, 3d ed., sec. 448.)

[7] Because section 2331 of the Revised Statutes says that "where placer claims cannot be conformed to legal subdivisions, survey and plat shall be made as on unsurveyed lands," respondents insist that plaintiff's claim is invalid because he never caused his land to be surveyed or a plat to be made. But the plat and survey referred to by the section invoked by respondents are the plat and survey to be made and filed when the application for a patent is made, and are not an essential to the perfecting of a valid location. (*White* v. *Lee,* 78 Cal. 596, [12 Am. St. Rep. 115, 21 Pac. 363].)

[8] Plaintiff monumented and staked his claim and posted his location notice on August 5, 1913. His first notice, recorded September 30, 1913, did not correctly describe

his claim; so, on the same day that he posted his first notice, August 5, 1913, he posted another notice, but failed to record this second notice until July 16, 1915. Because neither notice was recorded within thirty days after it was posted, as required by section 1426d of the Civil Code, respondents contend that plaintiff never acquired any valid mining claim, and that, therefore, it is of no consequence that the court, contrary to the evidence, found against plaintiff's allegations respecting defendants' acts of trespass.

The code does not visit a locator with forfeiture as a consequence of his failure to record his location notice in time. No such dire result follows his neglect. Though Congress has recognized the right of states to pass statutes, and of mining districts to adopt regulations, requiring the recording of location notices, Congress itself has not made the recording of the notice an essential prerequisite to a valid mining claim. So far as the steps required by Congress are concerned, a location right accrues by virtue of the prerequisite acts of discovery, prior possession, and marking boundaries. If the recording of the location notice be a necessary step to perfecting a valid mining claim, its necessity must be found clearly expressed in the state statute. (*Haws* v. *Victoria Copper M. Co.*, 160 U. S. 303, [40 L. Ed. 436, 16 Sup. Ct. Rep. 282, see, also, Rose's U. S. Notes]; *Ford* v. *Campbell*, 29 Nev. 578, [92 Pac. 206].) That plaintiff's failure to record his notice within the time prescribed by the code did not work a forfeiture of his claim, there being no such penalty affixed by the statute, is settled by the decisions of the supreme court of this and other states, as well as by the decisions of the federal courts. (*Emerson* v. *McWhirter*, 133 Cal. 510, [65 Pac. 1036]; *Stock* v. *Plunkett*, 181 Cal. 193, [183 Pac. 657]. See, also, *Zerres* v. *Vanina*, 134 Fed. 610; *Last Chance M. Co.* v. *Bunker Hill M. Co.*, 131 Fed. 579, 586, [66 C. C. A. 299]; *Sturtevant* v. *Vogel*, 167 Fed. 448, [93 C. C. A. 84]; *Ford* v. *Campbell, supra; Gibson* v. *Hjul*, 32 Nev. 360, [108 Pac. 759]; *Strepey* v. *Stark*, 7 Colo. 614, [5 Pac. 111].) It must be held, therefore, that, notwithstanding his failure to record the location notice within the time prescribed by the code, plaintiff did not, for that reason, forfeit his mining claim or his possessory right thereto, and that he has such title to the ground

monumented and staked by him as entitles him to relief against any unlawful trespass thereon.

[9] Under the evidence adduced at the trial, plaintiff's right to such water from the stream as may be reasonably necessary for his mining purposes is superior to any right that defendants may assert thereto. There was evidence to show that, from the time plaintiff made his location, defendants had actual notice that he was in possession of his claim, asserting a right thereto as a locator thereof under the United States mining laws. Under two recent decisions—one by the highest federal tribunal and the other by the supreme court of this state—it must be held that, notwithstanding plaintiff's failure to record his location notice within the time prescribed by the code, he acquired, not only a right of possession which he did not forfeit merely because of his neglect to make a timely record, but a location that, if imperfect, would, nevertheless, be superior to any location on the same ground that defendants might subsequently have attempted to make. (*Stock* v. *Plunkett*, *supra; Butte etc. Co.* v. *Clark etc. Co.*, 249 U. S. 12, [63 L. Ed. 447, 39 Sup. Ct. Rep. 231].) We think that if plaintiff's location would be superior to any that defendants subsequently might have attempted to make on the ground monumented and staked by him, his right to such water from the stream as may be reasonably necessary for beneficial use on his claim would be superior to any right in defendants to use the water upon their subsequently located mining claims on that part of the public domain that lies farther up the gulch.

We are satisfied that plaintiff's evidence was sufficient to make out a *prima facie* case entitling him to relief. It is quite possible, however, that, on the retrial of the case, defendants, who, at the last trial, were not required by the court to adduce any evidence whatever, may make a showing that will present the case in entirely new and different aspects.

Judgment reversed.

Sloane, J., and Thomas, J., concurred.