270 P.2d 1095

KING v. HINTZE.

No. 8071.

Supreme Court of Utah.

June 2, 1954.

Franklin Riter, Fred L. Finlinson and Hugh J. Hintze, Salt Lake City, for appellant.

Pugsley, Hayes & Rampton, Salt Lake City, for respondent.

JONES, District Judge.

From a money judgment entered against him in an action which arose out of a mining contract, defendant prosecutes this appeal.

Appellant and a man by the name of Kidder had been associated together in certain mining enterprises. Mr. Kidder maintained an office adjoining the place of business of respondent's brother-in-law. Respondent and Mr. Kidder had acquired a certain mining lease and option on several patented mining claims situated in the Hamilton Mining district of eastern Nevada. Some of this ore had been shipped to a smelter with good results. It was then decided that the public land surrounding this property should be filed on in order to enlarge and secure the ore body. Accordingly, late in the fall of 1949, a Nevada mining engineer was engaged to make these locations. He went out on the ground and staked out seventeen lode claims, posted the location notices, but failed to sink a shaft on each claim or to record the necessary notices as was required by Nevada law. At a later date, Mr. Kidder exhibited to appellant some of the ore settlement sheets, received from the smelter and Mr. Hintze became interested in taking over the development of the entire property. After some negotiations, appellant prepared the contract in question which the parties executed on June 24, 1950. Under the terms of this contract, respondent and Kidder then and there assigned all their right, title, and interest in and to the mining lease and option (the patented claims) to appellant; agreed to execute and deliver to appellant, or to the corporation to be organized by him, a quitclaim deed conveying all their right, title and interest in and to the seven-

teen unpatented mining claims above referred to; while appellant undertook to form a Nevada corporation capitalized at $500,000.00 divided into 5,000,000 shares, of which 1,250,000 shares were to be delivered to respondent and Kidder; and to take immediate possession of all the claims and commence mining operations thereon. Immediately after securing the contract appellant went out to Nevada, inspected the property; ascertained that valid locations had not been made on the seventeen unpatented claims, employed the same engineer who had been employed the fall before to re-locate these claims in Hintze's own name, and proceeded to take full possession of all the properties. Appellant never did organize the corporation as he agreed and undertook to do but has seen fit to retain all of the claims, both patented and unpatented as his own property. Respondent never did make and deliver the quitclaim deed to appellant as she had agreed to do, nor was she ever asked to do so.

Appellant contends that the unpatented mining claims were mere fictions on the date of the execution of the contract; that said contract implied that respondent had some right, title, claim and interest in and to said claims; and that the inability of respondent and Kidder to convey to appellant some substantial right or interest in and to said unpatented claims constituted a breach of the promotion contract of such nature as to defeat its purpose and relieve and discharge the defendant from the duty of or-

ganizing the corporation contemplated by the promotion agreement. In support of his argument, appellant refers both to the federal, R.S. 2324, 30 U.S.C.A. § 28, and Nevada statutory law, Secs. 4120 to 4122, incl. Hillyers Comp.Laws, Nevada, 1929, as well as Judicial citations, inter alia Nash v. McNamara, 30 Nev. 114, 93 P. 405, 16 L.R.A.,N.S., 168; Sisson v. Sommers, 24 Nev. 379, 55 P. 829, which hold: in order to make a valid lode mining location on the public domain (in Nevada) one must discover ore in place, erect a discovery monument, suitably mark off the claim on the ground, post notices thereon, sink a discovery shaft, and record a proper notice of location, not only with the district mining recorder (where applicable) but also with the county recorder of the county wherein the claim is located; and until and unless all of these things are properly and carefully accomplished, a valid and legal mining claim has not been located. See 2 Lindley on Mines, 3d Ed., Sec. 371. Appellant further cites respectable authority to the effect that merely because a purchaser agrees to accept a quitclaim deed to a piece of property is not necessarily a waiver of the right to demand a clear title; that the giving of a title by quitclaim deed imports that the grantor has some title, right, and interest which can pass by the conveyance; if the vendor has no right, title or interest the stipulation on his part amounts to a nullity, 55 American Jurisprudence 630. And finally, appellant offers judical authority to the effect that a

breach by one party that goes to the essence or root of a contract justifies a refusal of the other party to perform his promise and discharges his obligation to perform, even though there has been a partial performance on the part of the first party. 12 American Jurisprudence 901; 13 Corp.Jur. 627, 629.

We have no quarrel with the statute or textbook law and cases cited by appellant. It is in the application of these principles that appellant's case encounters rough seas. When appellant went out on the ground immediately after signing the contract and ascertained that the 17 unpatented claims had not been legally filed on, it became his privilege to rescind the contract in its entirety. But he did not make such an election. Instead, he caused these claims to be relocated in his own name thereby, in effect, waiving any defect in the prior filings. In the meantime neither the United States nor any person had taken or initiated any step or proceeding to interfere with the incompleted locations made by respondent and Kidder late in the fall of the previous year. See Dripps v. Allison Mines, 45 Cal.App. 95, 187 P. 448. Upon the completion of these relocations, appellant was in just as good a position, insofar as this property was concerned, as if the original filings had been legally made. At that time appellant had (and still has insofar as this record discloses) a good and valid lease and option covering the patented claims and legal and proper locations on the 17 claims surrounding the original workings. For a comparatively small sum, appellant could have created the corporation which he was required to set up under his contract and then made delivery to respondent of the stock he had agreed to hand over. This he has refused and failed to do, and for this course of conduct, in violation of the express terms of his contract, appellant must suffer the money judgment to stand against him.

We hold that the defenses presented were, and are, without merit. The judgment should be, and accordingly is, affirmed. Respondent to recover costs.

McDONOUGH, CROCKETT, and WADE, JJ., and PARLEY E. NORSETH, District Judge, concur.

WOLFE, C. J., being disqualified did not participate herein.

HENRIOD, J., having disqualified himself does not participate herein.