ATCHISON et al., appellants, *v.* PETERSON et al., respondents.

ABANDONMENT—*intention.* The suspension of work upon a ditch, from July, 1865, to August, 1866, was not an abandonment, if there was no intention to abandon the same.

WATER—*prior appropriator—quantity and quality.* The first appropriator of water for mining purposes is entitled to the same, as against subsequent appropriators, without material interruption in the flow thereof in quantity or quality.

INJUNCTION — *granting of* — *facts of case* — *refusal.* It appeared in this case that the head of a ditch was fifteen miles below certain mining ground; that the owners of the ditch, who were the first appropriators of the water, were compelled, on account of the working of the ground, to construct and maintain a sand reservoir, and use the water ten minutes daily to clean it, and employ, during this time, one man, who was also employed on the ditch for other purposes. The court held that the injuries complained of did not justify the granting of an injunction.

INJUNCTION — *solvency of parties* — *damages.* An injunction will not be granted if the parties are solvent and the complainants have an adequate remedy at law by bringing a suit for damages.

INJUNCTION — *remedy* — *injury.* Courts require a very strong case for the granting of an injunction which will cause more injury than it will remedy.

## Appeal from the Third District, Lewis and Clarke County.

THIS case was tried by the court, WADE, J., in November, 1871, who rendered a judgment for Peterson, and Atchison appealed. The facts appear in the opinion.

CHUMASERO & CHADWICK, for appellants.

Appellants were injured by the filling in of the ditch with sand and sediment, which required the services of one man extra to keep the sand out, and diminished the capacity of the ditch, and caused more labor to clean out the ditch in the spring. The court below ignored the evidence upon these points. Appellants were compelled, in the summer of 1871, to reduce the price of water ten cents per inch, owing to the same being rendered muddy by the mining of respondents. This reduction amounts to from $40 to $45 daily, the capacity of the ditch being from four hundred to four hundred and fifty inches. Yet the court finds that appellants are not injured by the deterioration of the water.

The court also ignored the evidence of appellants regarding the cleaning out of the ditch in the spring, and finds that appellants are not materially injured. The testimony shows that the work of cleaning out the ditch in the spring would be little or nothing, if it were not for respondents' mining. In 1871 appellants were compelled to expend $500 extra to what would have been necessary if respondents had not filled up the ditch. If such evidence does not show an injury, we do not comprehend the term.

The ditch had only one-half of its original capacity on account of sand, and appellants were damaged by the diminished quantity of water sold in 1870. The evidence showed that an extra man was required on account of the sand. His wages were $125 per month, or about $1,000 for the mining season. And yet the court finds that appellants are not materially injured.

If appellants were entitled to the use of the water as pure as they appropriated it, they are entitled to the protection which can only come from a court of equity. *Bear R. Co.* v. *York M. Co.*, 8 Cal. 333; *Butte C. & D. Co.* v. *Vaughn*, 11 id. 153; *Phœnix W. Co.* v. *Fletcher*, 23 id. 484; *Hill* v. *Smith*, 27 id. 480; S. C., 32 id. 166.

Appellants do not claim that respondents should be enjoined from working their mining ground. They only ask that respondents be enjoined from running their tailings down into appellants' ditch. This can be done by the erection of slum dams on Ten Mile creek. The judgment should be modified to allow this to be done. Appellants have expended $117,000 in valuable works, and should be protected from the acts of those who come after them and seek to destroy their property.

If respondents are responsible, this is no reason why they should not be enjoined. Courts of equity always interfere to prevent a multiplicity of suits. In this case appellants would be compelled to bring many suits against respondents to recover their damages year after year.

SHOBER & LOWRY and G. G. SYMES, for respondents.

The only way by which the decision of a court on the facts can be reviewed is by demanding written findings. *Sanchez* v. *McMahon*, 35 Cal. 225. No written findings were demanded by appellants, as required by law. Civ. Prac. Act, § 180. There were no written findings, and no instructions offered or given, or refused, and no exceptions were taken.

The statement does not contain a specification of the particular errors relied on, and should be disregarded. Civ.

Prac. Act, § 195 ; 3 Estee's Pl. 575 ; *Hutton* v. *Reed*, 28 Cal. 478 ; *Beans* v. *Emanuelli*, 36 id. 118.

If the record showed proper assignments of error, there is a conflict of evidence, and the findings of the court on the facts could not be set aside. *Frost* v. *Hartford*, 40 Cal. 165. The testimony preponderates in favor of respondents.

The party mining above on a stream has the right to use the water and turn it back into the channel. If parties below are slightly injured, it is *damnum absque injuria*. *Bear R. & A. W. Co.* v. *York M. Co.*, 8 Cal. 332 ; *Hill* v. *King*, id. 337 ; *Hill* v. *Smith*, 27 id. 479 ; *Phœnix W. Co.* v. *Fletcher*, 23 id. 483.

The question of a considerable injury to the water and ditch is a question of fact, on which there is a conflict of evidence. The findings of the court on facts will not be set aside unless the evidence was such that a verdict would be set aside as contrary to evidence. *Moore* v. *Murdock*, 26 Cal. 515.

The opinion of the court below is not a finding. 3 Estee's Pl. 432, and cases cited.

Appellants must make out a case showing a clear necessity for the issuance of an injunction. Hill. on Inj., §§ 16, 18. The granting of an injunction in this case would cause great injustice and injury to respondents. Injunctions are sometimes refused on this ground. Hill. on Inj., § 22.

The remedy of injunction is only granted in the absence of an adequate legal remedy. Hill. on Inj., § 25. Respondents are solvent, as shown by the evidence, and able to respond in damages.

WADE, C. J. This is a suit brought by the owners of the Helena Water Ditch Company against the defendants, for an injunction to restrain their mining operations on the upper Ten Mile creek. The plaintiffs' ditch taps the creek about fifteen miles below the mines of defendants, on the same stream, and the plaintiffs claim to be the prior appropriators of the waters of the creek or so much thereof as is necessary for the purposes of the ditch, and that the mining operations

of the defendants injure and damage the waters of the stream, and the ditch of the plaintiffs.

The testimony of the plaintiffs establishes the fact that the plaintiffs commenced their ditch in November, 1864, and continued work thereon until July, 1865, expending within that time about $23,000 thereon, and completing two-thirds of the digging required to complete the ditch, when their money failed, and the work suspended. No more work was performed on the ditch until August, 1866, but the company continued in possession and claiming the ditch until August, 1866, when they sold the same for $4,000, and work thereon was resumed, and the ditch completed and put in operation in 1867. There was no abandonment of the ditch within the meaning of the law, for when the work was suspended there was no *intention* to abandon, and the subsequent sale for a valuable consideration showed the property to be valuable, and there was, in fact, no abandonment of possession.

The testimony further shows, that in 1865 there was mining on the upper Ten Mile for two or three months on a small scale, but there was no continuous mining there until 1867, and since that time the proof is not satisfactory as to the continuance or extent of the mining there. The plaintiffs are clearly the prior appropriators of the waters of the Ten Mile creek to the capacity of their ditch, as against the defendants, and as such are entitled to the unobstructed use and flow of the water.

2. The facts herein shown are sufficient to demonstrate that the right to bring this action is not barred by the statute of limitations.

3. The only remaining question, and upon the decision of which the fate of this case depends, relates to the injury and damage to the plaintiffs, and their ditch, and the waters thereof in consequence of the mining operations of the defendants. The volume of the waters of the stream is increased by tributaries flowing into it between the head of plaintiffs' ditch, and the mines of defendants from fifteen to eighteen miles above, about five-sixths, that is to say, the

stream where plaintiffs' ditch taps it is about six times as large as at the point where the mining operations of defendants are carried on. If twelve hundred inches of water flow down the stream opposite the head of plaintiffs' ditch, two hundred inches thereof, or in that proportion, would come from the upper Ten Mile at the point where the defendants are mining. The tailings of the defendants are cribbed, and this two hundred inches of water, after having been used for mining several times, flows down the stream for fifteen or eighteen miles to the head of plaintiffs' ditch, but before reaching that point is mixed with ten hundred inches of pure water, and in this condition it enters the ditch of plaintiffs. It then flows through the ditch for thirteen miles and is used for mining purposes in Last Chance gulch.

It is admitted that the mining of defendants does not diminish the flow of the waters of the creek, and the testimony is entirely conclusive upon the proposition that the water after reaching the mines of Last Chance, where it is used, is first-class water for mining purposes, and that it is not diminished in quantity or quality at that point. Then the only remaining question relates to the injury and damage to the ditch caused by the flow of this water through it.

There is abundance of testimony tending to show that the water will become clear after having been used for mining, in flowing five or six miles, while, upon the other hand, there is proof going to show that roily water will never become pure as long as it is in motion ; and this latter view is the most satisfactory, and I have not much hesitation in saying, judging from the testimony, that the waters of Ten Mile creek, at the point where the plaintiffs' ditch taps the same, are discolored, and carry a certain amount of sediment in consequence of the mining of defendants. Before this mining commenced the waters of the creek were pure.

Now let us examine the extent of the injury to the ditch. The water is not injured, as we have already shown. Then the only injury that could result is in filling the ditch and in constructing and tending the necessary apparatus to keep the sand and sediment from entering the same.

The ditch had to be cleaned each spring, and did before the mining of defendants commenced, and it is not very satisfactorily shown that the cleaning required any considerable more labor since the mining than before. Certainly the flow of the water has not been materially obstructed since the mining commenced. But the proof shows this fact, that the plaintiffs have been compelled to construct a sand gate or reservoir, to catch the sand and sediment, and that this, during the mining season, fills every twenty-four hours, and that the waters of the ditch had to be used from ten to twenty minutes each day in cleaning this gate or reservoir, and that one man's services are necessary for that time to clear the sand and sediment from the reservoir. The testimony shows that this ditch is divided into three sections, and that the services of one man to each section is constantly employed, and was before there was any mining on the creek, to keep the ditch in running order. Mr. Atchison thinks that two men might probably attend to the ditch if it was not necessary to tend the sand gate. Then the extent of the injury and damage is reduced to this: the construction of a sand gate, the use of the water ten minutes each day to wash and cleanse it, and the services of a man for that length of time who is necessarily employed in other services on the ditch, and is not, especially there for the purpose of tending the sand gate, but is on the ditch for general services, working by the month.

Does the case come within the range of the decisions cited by appellants in the California Reports? We will examine those cases. In the case of *Hill* v. *Smith*, 27 Cal. 480, the defendants had been engaged for four weeks in digging up the bed of a creek at points from six hundred feet to one thousand feet above the head of the ditch, and washing down the earth and water into the ditch, thereby mixing the earth and mud with the water, and that in consequence thereof the sales of water were injured, and the use of the mines destroyed; where the plaintiff had previously sold sixty inches of water she was compelled to sell one hundred

and twenty inches at the same price, in consequence of the deterioration of its solvent capacity, by reason of the sediment and mud from defendants' mining claim, and that some of the miners quit work entirely in consequence of the muddy water. Is this case parallel in any sense to the case at bar? Here the mining was only six hundred feet to one thousand feet from the head of the ditch, while in the case under consideration it is at least fifteen miles away, and a large volume of pure water mixes with the water from the mines before reaching the ditch.

The case in the 23d Cal. 480, *Phœnix Water Company* v. *Fletcher*, shows this state of facts. The plaintiffs were the prior appropriators of the waters of the stream, and had constructed a ditch for mining purposes. The defendants erected a dam across the stream above the plaintiffs' ditch for the purposes of a saw-mill, and caused the waters to flow irregularly, at times holding it back, and suffering but a small quantity to flow to plaintiffs' ditch, and at other times letting it down in greatly increased quantity, and that the saw-dust and refuse bark of the mill is thrown into the stream by the defendants, clogging and filling the plaintiffs' ditch and reservoirs, and thereby diminishing their capacity to flow and hold water, and that thereby serious injury was caused to the plaintiffs. The exact nature and extent of the injury is not stated, but it may well be supposed that the irregularity in the flow caused by the mill and dam of defendants was the chief source of damage, as that was one of the principal points decided in the case, and as to this point the doctrine in the case of *The Bear River and Auburn Water and Mining Company* v. *The New York Mining Company*, 8 Cal. 327, that the first appropriator of water for mining purposes is entitled to have the water flow without material interruption in its natural channel, is approved and confirmed.

In the case under consideration, there was no material, if any, interruption in the flow of the stream, and no complaints from the miners for irregularity in the supply of water from the ditch.

The doctrine that the first appropriator of water for mining purposes is entitled to the waters of a stream as against subsequent appropriators without material interruption in the flow thereof, or in quantity or quality, is fully recognized. This proposition has been too long established in this mining region to be now called in question, and I apply this doctrine to the case in hand.

The water of Ten Mile creek, at the place where it enters plaintiffs' ditch, is first-class water for mining purposes. It is of the same quality when it reaches the mines of Last Chance, and the only damage to the plaintiffs, in consequence of the mining of defendants, is the work of one man for from ten to twenty minutes each day and the use of the waters of the ditch for that length of time, and this service is performed by a man working by the month, and his pay is not thereby increased. This sand gate is effectual in its operation, and the task of cleaning the ditch each spring is not materially increased in consequence of the mining above.

Then it only remains to say that the nature and extent of the injury complained of is not such as would authorize or justify the granting of the injunction prayed for.

Mining upon the upper Ten Mile will cause the waters of the stream to be discolored, and to carry a certain amount of sediment for many miles below plaintiffs' ditch, and to grant the injunction would necessarily cause the defendants to cease mining.

There is one further consideration. The defendants are shown to be responsible for their acts. Their mining claims are shown to be worth from $15,000 to $20,000 each, and this testimony is not disputed, and there is no testimony tending to show the insolvency of defendants, and for the purposes of this case they must be taken to be solvent and responsible. The office of an injunction is to prevent an irreparable injury, and it is not applicable to those where the parties have an adequate remedy at law. In this case, if the defendants have injured the plaintiffs, a suit for dam-

ages would be the appropriate remedy, the defendants being responsible and solvent.

It would require a very strong case for an injunction to justify the granting thereof, when such an act would cause infinitely more damage than it would remedy, *and* this is the case at bar.

The matter of granting or refusing an injunction is very much in the discretion of the court, and we think a sound discretion was exercised in the case at bar.

*Judgment affirmed.*