JOHN FITZPATRICK, RESPONDENT, *v.* LEE MONTGOMERY, APPELLANT.

[Submitted June 9, 1897.   Decided October 11, 1897.]

WATER RIGHT—*Liability for Injury.*—A placer miner has the right to deposit tailings in a running stream to a reasonable extent, but not the right of depositing tailings and debris upon the land of one below him in such an amount as to substantially injure and ruin the same, and the rule is not changed by the fact that the mining operation could not be successfully carried on without inflicting the injury.

*Appeal from District Court, Deer Lodge County.   Theodore Brantly, Judge.*

20  181
Case 2
31  583

20   181
Case 2
e36   387
36   390
36   391

20    181
Case 2
38    484

ACTION by John Fitzpatrick against Lee Montgomery. From a judgment for plaintiff, and an order denying a new trial, defendant appeals.    Affirmed.

Statement of the case by the justice delivering the opinion.

This is an action to recover for damages to real estate.    It appears from the pleadings and record that the plaintiff has been since the year 1894, and is now, the owner and in possession of certain real estate situated on what is known as "Buffalo Creek," in Deer Lodge county, said real estate being agricultural land, constituting the ranch of the plaintiff.

The complaint charges that the defendant was engaged in placer mining on said creek above the premises of the plaintiff during the years 1894 and 1895, and that while so engaged in placer mining he so negligently operated and worked the mine as to permit tailings, rocks and debris therefrom, of which there was a large quantity, to run down, wash and be deposited upon the land of the plaintiff, covering a large quantity thereof with such tailings, rocks and debris, and destroying the same, and making it unfit for agricultural or any other useful purpose, and causing said Buffalo creek, which runs through the land of plaintiff, to form a new and different channel upon such land, whereby it is claimed plaintiff's land was damaged in the sum of $750.    The answer is a specific denial of all the material allegations of the complaint.

The case was tried to a jury, and a verdict found in favor of plaintiff for the sum of $150, upon which judgment was rendered.    The defendant appeals from the judgment and order overruling a motion for a new trial.

*C. B. Nolan* and *Ed Scharnikow*, for Appellant.

The trial court proceeded upon the theory in the exclusion of the evidence, and in the instructions given to the jury, that the doctrine that one should so conduct his business or enjoy his property rights that no damage should result to anybody else in its application to placer mining should be recognized.

The broad application of this principle applied to a legitimate enterprise, as placer mining is in this state, under the authorities is unquestionably erroneous. (*Panton* v. *Holland*, 17 Johns 92; *Tenny* v. *Miners' Ditch Co.*, 7 Cal. 327; *Hentz* v. *Long Island Railroad Co.*, 13 Barb. 658.) This doctrine announced by the court would unquestionably be true if placer mining constituted a nuisance. The carrying of the business occasioning injury to somebody else would undoubtedly subject the party to liability for damages occasioned, but as stated by this court in the case of *McCauley* v. *McKeig*, 8 Mont. 389, slight damage would not be sufficient to justify the court in the issuance of a restraining order, affecting as it would one of the most extensive and productive enterprises in the state. A person engaged in a legitimate business is only liable for such injuries as result from negligence or want of ordinary care and prudence in the management thereof. (*Hopkins* v. *Butte & Montana Commercial Co.*, 13 Mont. 223, 33 Pac. 817, 40 Am. St. Rep. 438; *McCauley* v. *McKeig*, 8 Mont. 389, 21 Pac. 22; *King* v. *Miles City Irrigating Ditch Co.*, 16 Mont. 463, 41 Pac. 431.)

*O. B. O'Bannon* and *Rodgers & Rodgers*, for Respondent.

The law that every person must so use and work his own property as not to injure or damage the property of another is applicable to placer mining the same as to other legitimate enterprises. (*Nelson* v. *O'Neill*, 1 Mont. 284; *Hill* v. *Smith*, 27 Cal. 476; *Robinson* v. *Black Diamond Coal Co.*, 57 Cal. 412; *Hobbs* v. *Amados & Sacramento Canal Co.*, 66 Cal. 161, 4 Pac. 1147; *Logan* v. *Driscoll*, 19 Cal. 623; *Phœnix Water Co.* v. *Fletcher*, 23 Cal. 482; *Levaroni* v. *Miller et al.*, 34 Cal. 234.) It is wholly immaterial who had the prior right to the use of the water of Buffalo creek, for even if the prior right to use the water were in appellant that would not authorize him to destroy the property of respondent. (*People* v. *March*, 6 Cal. 543; *Satterlee* v. *Bliss*, 36 Cal. 489; *People* v. *Cockran*, 61 Cal. 584.)

PEMBERTON, C. J.—The appellant says: "The only questions presented by this appeal are, first, whether the court is correct in its conception of the law that in placer mining the operator becomes responsible at all events where any damage results from his mining operations, and that the question of care in conducting his business becomes absolutely immaterial; and this question is raised in the record by the exclusion of evidence offered to show the care exercised by the defendant in his mining operations to prevent damage to plaintiff's land, and in the instructions given to the jury."

The other question is as to whether the court erred in instructing the jury upon the assumption that the plaintiff had the prior right to the waters of Buffalo creek.

There is no contention that the evidence is insufficient to support the verdict.

Appellant says there was no evidence introduced to show priority of right to the waters of the stream in the plaintiff. We think there is evidence that plaintiff had located on the land in question, and had taken out a part of the waters of said stream by means of an irrigating ditch, prior to the time defendant commenced his mining operations on the creek. But, be this as it may, we think this question unimportant, even if it be conceded that there was technical error in the giving of the instruction complained of. The material question in the case is not as to who had the prior right to the use of the waters of the stream.

On the trial the defendant contended that, if he did damage the plaintiff's land by his mining operations, he could not prevent it by any effort he could make; that he used all reasonable means to prevent such damage; that he was engaged in mining; that he was guilty of no negligence in mining his ground; and that, if the plaintiff was damaged, he is without remedy. The defendant, in support of this defense, offered to prove what he did, and the means he used to prevent damage to plaintiff's land. The court excluded this offered proof, and charged the jury that it was immaterial whether defendant could have prevented the damage to plaintiff's land

resulting from defendant's mining operations or not, and, that if defendant damaged plaintiff's land, he was liable, whether he could have prevented it or not.   In this action of the court is found the only important or serious question presented by the appeal.

In all the states of the union where mining has been at all extensively engaged in, especially in the northwestern states and territories, the question here presented for determination has been a fruitful source of litigation.   Under the common law the owner of land through or along which a stream flowed had a right to have it flow in its natural channel, undiminished substantially in quantity, and unpolluted in quality, whether he derived any practical benefit from such stream or not. This doctrine has been departed from, if, indeed, it ever was recognized as the rule of law in the gold-mining states and territories of the northwestern part of the union, and especially so in the Pacific states and territories.   There the right to appropriate water for mining and other useful purposes is as old as the settlement and civilization of such states and territories.   The right to appropriate water on the public lands by miners and for other useful purposes was long ago recognized by congress.   We think it may be safely said that the right to appropriate water for mining and other useful purposes is settled as the law in all the mining states of the West. It is certainly the settled rule in this state.   (*Atchison* v. *Peterson*, 1 Mont. 561; *Gallagher* v. *Basey*, 1 Mont 457.) California, it is true, by a divided court has confined the right to make such appropriation to waters on public lands, holding that the purchaser of lands from the government takes the same with all the common-law riparian rights attached.   (*Lux* v. *Haggin*, 69 Cal. 255, 10 Pac. 674.)

The Oregon Supreme Court, in *Curtis* v. *Water Co.*, 20 Or. 34, 23 Pac. 808, and 25 Pac. 378, followed the rule announced by the California court.   But this restriction is not recognized in Nevada or Colorado, nor in any other of the mining states or territories, that we are aware of.   (*Jones* v. *Adams*, 19 Nev. 78, 6 Pac. 442; *Reno Smelting, M. & R. Works* v.

*Stevenson*, 20 Nev. 269, 21 Pac. 317; *Coffin* v. *Ditch Co.*, 6
Col. 443; *Golden Canal Co.* v. *Bright*, 8 Col. 144, 6 Pac.
142.)

But the right to appropriate the water of the streams in the
states and territories above mentioned has, we believe, been
universally held to be a right with certain restrictions and
limitations.

*Atchison* v. *Peterson* and *Gallagher* v. *Basey*, *supra*, were
both appealed from the Supreme Court of Montana to the Su-
preme Court of the United States, and are reported, respec-
tively in 20 Wall., at pages 507 and 670.   In both these cases
the rule is clearly announced that the right to appropriate
water in the states and territories where the doctrine of ap-
propriation prevails is a limited or restricted right.   The right
to appropriate water for mining purposes, to propel machinery
in mills, to irrigate agricultural land, and for like purposes,
is recognized as well for one purpose as for another.   The
appropriation must be for a useful purpose, and ''is limited,
in every case, in quantity and quality, by the use for which
the appropriation is made.'' (*Atchison* v. *Peterson*, *supra*.)

In *Basey* v. *Gallagher*, 20 Wall. 670, Mr. Justice Field,
delivering the opinion of the court said :   ''Water is diverted
to propel machinery in flour mills and saw mills, and to irri-
gate land for cultivation, as well as to enable miners to work
their mining claims; and in all such cases the right of the first
appropriator, exercised within reasonable limits, is respected
and enforced.   We say within reasonable limits, for this right
to water, like the right by prior occupancy to mining or agri-
cultural land, is not unrestricted.   It must be exercised with
reference to the general condition of the country and the neces-
sities of the people, and not so as to deprive a whole neighbor-
hood or community of its use, and vest an absolute monopoly
in a single individual.''

The appropriator of water does not become the owner of
the water by the act of appropriation.   He acquires the right
to the use of the water for some useful purpose.   The miner,
the mill man, and agriculturist all have an equal right to ap-

propriate water.   The appropriator for one useful purpose
has no preference or superior right in law to an appropriator
for any other purpose.   While any person is permitted to ap-
propriate water for a useful purpose, it must be used with
some regard for the rights of the public.   The use of water
in this state is declared by the constitution to be a public use.
(Constitution, Article 3, § 15.)   It is easy to see that, if per-
sons by appropriating the waters of the streams of the state
became the obsolute owners of the water without restriction in
the use and disposition thereof, such appropriation and uncon-
ditional ownership would result in such a monopoly as to
work disastrous consequences to the people of the state.   The
tendency and spirit of legislation and adjudication of the
northwestern states and territories have been to prevent such
a monopoly of the waters of this large section of the country,
dependent so largely for prosperity upon an equitable, and, as
far as practical, free, use of water by appropriation.   But
we will not further discuss this feature of the question pre-
sented by this appeal.

The contention of the appellant is that he is engaged in min-
ing; that he has a right to use the water of the stream
mentioned in the complaint in his business; that if he made
proper effort to prevent injury and damage to the plaintiff, and
was unable to prevent such damage, he is not responsible, and
the plaintiff is without remedy.

We believe that the right to deposit tailings in a running
stream to a reasonable extent is permissible in the mining
states and territories, but this rule has never been carried to
the extent of permitting the miner to flood his neighbor's
land, and, by depositing tailings and debris thereon, to sub-
stantially injure or ruin his neighbor's property.

In *Hobbs* v. *Canal Co.*, 66 Cal. 161, 4 Pac. 1147, it is said:
"No person, natural or artificial, has a right, directly or in-
directly, to cover his neighbor's land with mining debris,
sand or gravel, or other material, so as to render it value-
less."

Our own court, in *Lincoln* v. *Rodgers*, 1 Mont. 217, held

that the first locators of mining ground have no right, by custom or otherwise, to allow tailings to run free in the gulch, and render valueless the mining claims of subsequent locators below them.    And in *Nelson* v. *O'Neal*, 1 Mont. 284, the Supreme Court held that, while miners had the right to the free use of the channel of the creek, so that the water will flow from the ground, they have no right to fill the channel with tailings that will flow down upon the claims of other miners. And it makes no practical difference how careful a miner may be in working his mine, if he actually injures his neighbor's property, he is responsible, notwithstanding the effort he makes or means he uses to prevent such injury.    (*Hill* v. *Smith*, 27 Cal. 476; *Levaroni* v. *Miller*, 34 Cal. 231.)

Nor is the contention that it was necessary to damage plaintiff's land in order that the defendant might carry on his mining operations successfully available as a defense.    (*Esmond* v. *Chew*, 15 Cal. 137.)

Upon this question it is said in *Columbus, Etc., Iron Co.* v. *Tucker*, 48 Ohio St. 41, 26 N. E. 630: "The further claim of the company that it had the right to make the deposits in the places complained of because it was necessary to the successful conduct of its own business to so place them, seems no less wanting in substance.    The effect is to measure the rights of the plaintiff in his lands, and in the waters of the Monday creek, by the convenience or necessity of the company's business."

In *Robinson* v. *Coal Co.*, 57 Cal. 412,—a similar case to the one under consideration,—the court said : "But the plaintiff's evidence, as we view it, tends to prove another and very material fact, viz., that said refuse matter was the product of the defendant's mining operations, and was deposited in said creek through agencies controlled by the defendant, and that, although it was not responsible for the inundation of the plaintiff's land by the water of said creek, it was responsible for the deposit of the deleterious substances with which said water was charged, through its agency, upon said land. This does not in any manner involve the question of the de-

fendant's right to mine or prosecute any other legitimate business upon its premises. It would not be claimed that the defendant could convey and deposit refuse matter from its mine upon the plaintiff's land by means of carts or cars without incurring liability for any damages which the plaintiff might suffer by reason thereof. And we know of no principle upon which it could be held that a person may escape liability by doing that indirectly which would render him liable if done directly."

In *Pumpelly* v. *Green Bay Co.*, 13 Wall. 166, it is said by the court "that, where real estate is actually invaded by superinduced additions of water, sand, earth or other material, so as to effectually destroy or impair its usefulness, it is a taking within the meaning of the constitution."

In discussing the doctrine here involved, the Supreme Court of California, in *People* v. *Gold Run Ditch & Mining Co.*, 66 Cal. 138, 4 Pac. 1152, said : "Undoubtedly, the fact must be recognized that in the mining regions of the state the custom of making use of the waters of streams as outlets for mining debris has prevailed for many years; and as a custom it may be conceded to have been founded in necessity, for without it hydraulic mining could not have been economically operated. In that custom the people of the state have silently acquiesced, and upon the strength of it mining operations, involving the investment and expenditure of large capital, have grown into a legitimate business, entitled equally with all other business pursuits in the state to the protection of the law. But a legitimate private business, founded upon a local custom, may grow into a force to threaten the safety of the people and destruction of public and private rights, and when it develops into that condition the custom upon which it is founded becomes unreasonable, because dangerous to public and private rights, and cannot be invoked to justify the continuance of the business in an unlawful manner. Every business has its laws, and these require of those who are engaged in it to so conduct it as that it shall not violate the rights that belong to others. Accompanying the ownership of every species of property is a corresponding duty to so use it as that it shall not abuse the rights of other recognized owners."

We think, however, as is held by the authorities, that each case of this character should be determined by its own facts and circumstances. Persons appropriating water cannot avoid fouling and obstructing, and, to some extent, diminishing, the quantity of water in a stream. These things are unavoidable, and are permitted to a reasonable extent in the right use of the water. Verdicts and judgments for fanciful or insignificant damages in such cases, ought not to be rendered. Courts are very cautious, and ought to be so, in issuing injunctions in such cases, as more damage may be done by the injunction than could be prevented by its issuance. It is a field of litigation filled with great annoyance and difficulty to both legislatures and courts. It will continue to be such as long as the interests of men conflict.

As far as the case under discussion is concerned, we think, under the view we take of the authorities we have consulted in a very full consideration of the case, that the plaintiff has a meritorious cause of action against the defendant for actual damage done to his lands. The plaintiff is evidently the prior appropriator of the waters of the stream mentioned in the complaint, although no particular stress was placed upon the question of priority on the trial of the case.

We see no error in the action of the court in excluding the testimony offered by defendant to prove the effort he made, and his inability to prevent damage to plaintiff; nor in the giving of the instructions by the court upon that theory of the law, which action is assigned as the principal error in the case.

The doctrine involved in this case is thoroughly and ably discussed by Mr. Curtis H. Lindley, of the San Francisco bar, in his Treatise on the American Law Relating to Mines and Mineral Lands, in Sections 838 to 853, inclusive, and the authorities are collated and cited. Especial reference is made to this able work, and the authorities cited by the author.

The judgment and order appealed from are affirmed.

*Affirmed.*

Hunt, and Buck, JJ., concur.