WINE, RESPONDENT, *v.* NORTHERN PACIFIC RAILWAY CO., APPELLANT.

(No. 3,294.)

(Submitted October 22, 1913.   Decided November 1, 1913.)

[136 Pac. 387.]

*Waters and Watercourses — Railroads — Surface and Flood Waters—Removal of Obstruction—Liability for Damage.*

Railroads—Watercourses—Ice Gorges—Removal—Liability for Damage.

1.   While a railroad company must exercise the highest degree of care to keep its track and roadbed safe, it may not in so doing, even in cases of emergency, injure the property of an adjoining owner without rendering itself liable for the resultant damage; hence, refusal of an instruction that if removal of an ice gorge in a river near defendant's roadbed was necessary to protect it and a bridge crossing the stream, the plaintiff could not recover damages for the flooding of his premises occasioned thereby, was proper.

Same—Flood and Surface Waters.

2.   Where water is forced out of the channel of a stream by an ice gorge, its character—whether surface or flood water as defined in *Fordham* v. *Northern Pac. Ry. Co.*, 30 Mont. 421—and the extent of the right of persons affected by its presence to deal with it, are dependent upon the facts as they are made to appear in each particular case.

Same—Watercourses—Removal of Obstruction—Liability for Damage.

3.   Waters forced over the banks of a river by an ice gorge which, upon removal of the obstruction by defendant railway company, returned to the channel and became part of the torrent which inundated plaintiff's land lying below, were flood and not surface waters, and therefore, under the doctrine announced in the *Fordham Case, supra,* defendant was liable for the damage caused to plaintiff, irrespective of any question of negligence.

[As to the right of one land owner to accelerate or diminish the flow of water to or from the lands of another, see note in 85 Am. St. Rep. 707.]

*Appeal from District Court, Broadwater County;* W. R. C. *Stewart, Judge.*

ACTION by Joseph R. Wine against the Northern Pacific Railway Company. From an adverse judgment and order, defendant appeals. Affirmed.

*Messrs. Gunn & Rasch,* for Appellant, submitted a brief; *Mr. E. M. Hall,* of Counsel, argued the cause orally, citing: *Cairo etc. R. Co.* v. *Houry,* 77 Ind. 364; *Lamb* v. *Reclamation Dist. No. 108,* 73 Cal. 125, 2 Am. St. Rep. 775, 14 Pac. 625; *Rex* v. *Commissioners,* 8 Barn. & C. 355; *McDaniel* v. *Cummings,* 83 Cal. 515, 8 L. R. A. 575, 23 Pac. 795; *Cass* v. *Dicks,* 14 Wash. 75, 53 Am. St. Rep. 859, 44 Pac. 113; *Harvey* v. *Northern Pac. Ry. Co.,* 63 Wash. 669, 116 Pac. 464; *Gulf etc. Ry. Co.* v. *Clark,* 101 Fed. 678, 41 C. C. A. 597; *Johnson* v. *Chicago etc. Ry. Co.,* 80 Wis. 641, 27 Am. St. Rep. 76, 14 L. R. A. 495, 50 N. W. 771; *McCoy* v. *Board of Directors,* 95 Ark. 345, 129 S. W. 1097; *Waffle* v. *New York Central R. Co.,* 53 N. Y. 11, 13 Am. Rep. 467; *Missouri Pacific Ry. Co.* v. *Keys,* 55 Kan. 205, 49 Am. St. Rep. 249, 40 Pac. 275.

*Mr. J. R. Wine, Jr.,* for Respondent, submitted a brief and argued the cause orally.

The waters of the Missouri river, which were backed up by the lower gorge and held on the lowland, to the west of defendant's embankment, formed a continuous body with the Missouri river, and were a part thereof, and governed by the rule of law announced in the case of *Fordham* v. *Northern Pacific R. Co.,* 30 Mont. 421, 104 Am. St. Rep. 729, 66 L. R. A. 556, 76 Pac. 1040. (See, also, *Riddle* v. *Chicago R. I. & P. R. Co.,* 88 Kan. 248, 128 Pac. 195.)

The placing of an obstruction in a natural watercourse in such a way as to cause the water to leave the channel and flood and injure the lands of a riparian owner is a trespass to said lands, rendering the person responsible for the obstruction liable for

the damage suffered, and in such an action it is not necessary to either plead or prove negligence. (See 28 Am. & Eng. Ency. of Law, 551 *et seq.;* 38 Cyc. 994 *et seq.*) Nor is the intent with which the trespass is committed material. (*Id.;* see, also, *Staton* v. *Norfolk & C. R. Co.,* 111 N. C. 278, 17 L. R. A. 838, 16 S. E. 181.) One who wrongfully places an obstruction in a natural watercourse, thereby diverting the flow upon the lands of another, creates a nuisance *per se.* (*Allen* v. *Stowell,* 145 Cal. 666, 104 Am. St. Rep. 80, 68 L. R. A. 223, 79 Pac. 371; 29 Cyc. 1155, 1178.)

The flooding of private lands is a taking within the constitutional prohibition. The leading case on this subject is that of *Pumpelly* v. *Green Bay Co.,* 13 Wall. (U. S.) 166, 20 L. ed. 557. See, also, 7 Rose's Notes to United States Reports, p. 648 *et seq.,* where the author has collected and digested the cases in which the *Pumpelly Case* has been referred to and approved.

A railroad company, as such, has no more right or authority to flood another's lands than a private individual. (*Union Pac. Ry. Co.* v. *Dyche,* 31 Kan. 120, 1 Pac. 243; *Jenkins* v. *Wilmington & W. R. Co.,* 110 N. C. 438, 15 S. E. 193.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Action for damages alleged to have been caused to the lands of plaintiff by the wrongful act of the defendant. The plaintiff had verdict and judgment. The defendant has appealed from the judgment and an order denying its motion for a new trial.

The plaintiff is the owner of lands lying on both sides of the Missouri river, a short distance below the point where the defendant's line of railway crosses it, near Townsend, in Broadwater county. The general course taken by the river in this locality is from the southwest to the northeast. The course of the railway is from the southeast toward the northwest, crossing the river nearly at right angles. For the distance of more than a mile from the river to the southeast, the lands on either side

of the railway are lowlands, elevated only a few feet above the stream at its ordinary stage. Beyond the river to the northeast the condition is the same. Plaintiff's residence, with appurtenant out-buildings, orchard, garden, and meadow, is situated on a portion of his lands lying on the southeast bank. The main body of his lands lies along the opposite bank. The line of the railway approaches the bridge from the southeast by means of an embankment, which increases in height, from a few inches near Townsend, to about eight feet where it reaches the bridge. This embankment was constructed many years ago when the railway was built. It has no substantial openings to permit the escape of water which may accumulate on the side toward the southwest from an overflow of the river or from precipitation. Such accumulations can escape only by following the line of the embankment to the river at the bridge. It is not unusual that, during the spring thaws when the ice leaves the river, gorges are formed which, varying in size and duration, impede the flow of the river causing temporary overflows of portions of adjacent lowlands. On March 4, 1910, such a gorge formed at a point about 350 yards above the defendant's bridge. At the same time a second gorge formed below the bridge nearly opposite the residence of the plaintiff. The upper gorge caused an overflow of water from above, which, being held in check by the volume detained by the lower gorge, accumulated on the upper side of defendant's embankment, rising in places approximately to its crest and threatening its safety. The general level of the stream and the flood water was then stationary at about five and one-half feet above the normal stage, but was not sufficiently high to flood any substantial portion of plaintiff's lands on either side of the river. On March 5 a strong wind began to blow from the west, driving the water against the embankment so that it began in places to wash out the material from under and between the ties. Having concluded that a removal of the upper gorge would permit most of the flood waters to escape by the main channel of the river and that the embankment would thus be relieved from danger, the employees of defendant, though they

knew of the lower gorge, on the afternoon of March 6 blew it out with dynamite, with the result that the torrent of water thus released, being caught and in part detained by the lower gorge, raised the level of the stream below to a height of ten feet, and caused it to overflow substantially all of plaintiff's lands to the depth of several feet, flooding plaintiff's residence, destroying his household effects, and depositing upon his orchard, garden, and meadows, in places, large amounts of boulders, sand, and drift timber, and in others washing away the soil to such an extent as to render these portions of them wholly useless. These facts are not controverted. There was also evidence tending to show that plaintiff's lands would not have been flooded at all° but for defendant's interference with the upper gorge. There was some conflict in the statements of the witnesses upon the question whether on the morning of March 6 the flood water held by the embankment had so far subsided as to remove the threatened danger to the track, and thus the necessity for defendant to blow out the gorge as a protective measure. Under the rule of law applicable to cases of this character, as we shall see later, we think it wholly immaterial whether the necessity arose for action on the part of the defendant or not.

At the trial counsel for the defendant assumed the position that when the defendant, engaged as it is in the performance of a public duty, was confronted with the emergency created by the gorge rendering its roadbed and track unsafe, and the necessity was thus created for it to act in order to remedy the dangerous condition and safeguard its passengers and freight, it had the right to adopt any means suitable to that end, and hence that the plaintiff could not recover for any damage suffered by him by reason of the course pursued by the defendant. This position is shown by special requests for instructions tendered by the defendant, the theory of all of which is exemplified by the following: "The defendant railway company, as a common carrier of persons and freight, was in duty bound to exercise the highest degree of care to protect its line of railroad from being injured or destroyed and to take all necessary pre-

caution to prevent its line of railroad from becoming unsafe or dangerous for the movement and operation of its trains and cars over its said line of railroad. And if you find from the evidence in this case that the existence of the said upper ice gorge, and the accumulation of ice, water and material caused thereby, made it necessary for the defendant company, in order to protect its bridge, roadbed and tracks and to keep the same safe so as to enable it to operate its trains and cars with safety to passengers and freight carried over its line of road, to remove said gorge, and the said ice gorge was so removed by defendant company in order to protect its said bridge, roadbed, and tracks and keep the same safe for public travel, then the plaintiff cannot recover, and your verdict should be for the defendant."
The court refused the instructions and submitted the case to [1] the jury on the theory that, if the plaintiff would not have been damaged but for the act of the defendant in removing the gorge, he was entitled to recover. It is true that it is incumbent upon a common carrier, such as the defendant, to exercise the highest degree of care to keep its track and roadbed safe, and to this end make prompt and energetic use of every means at its command in every emergency to provide for the safety of the passengers and goods intrusted to its care, and that this duty is higher than that which it owes to land owners along the line of its road (*Louisville N. A. & C. Ry. Co.* v. *Thompson,* 107 Ind. 442, 57 Am. Rep. 120, 8 N. E. 18, 9 N. E. 357); but the obligation to exercise the care and diligence exacted of it in this regard does not justify the postulate that it may under any stress of circumstances appropriate to its own use or injure the property of such land owner, without rendering itself liable to him for the injury thus done. As an owner of property it has the same rights as any other person, and is under the same obligation to so use its property as not to injure that of an adjoining owner. It has the unqualified right to operate its road in a reasonable and proper manner and to adapt its property to the use for which it was acquired; but it is subject to the same rules of law as are the adjoining proprietors, and, if in conducting

its business it infringes upon the rights of others, it becomes liable for damages to the same extent as a natural person. (*Staton* v. *Norfolk & C. R. Co.,* 111 N. C. 278, 17 L. R. A. 838, 16 S. E. 181.)   If it commits a trespass, it is liable in an action for trespass.   If during the conduct of its business it creates a nuisance or suffers one to exist upon its own property, it is liable in an action on the case.   In the one case no question of diligence or skill can arise; liability will attach if the injury done is the result of the active agency of the defendant.   In the other it will be liable if the injury is consequential or is the result of negligence or nonfeasance.   (*Fleming* v. *Lockwood,* 36 Mont. 384, 122 Am. St. Rep. 375, 13 Ann. Cas. 263, 14 L. R. A. (n. s.) 628, 92 Pac. 962.).

The requested instructions assume that, inasmuch as a railway is for the benefit of the public, in the authority given by the legislature to construct it, there is an implied subordination of the rights of the adjoining proprietors.   This is true in so far as a railway company is given the privilege, by condemnation proceedings, to take or damage property necessary for the construction and operation of its road; but this power cannot be exercised except within the limitations and upon a fulfillment of the condition precedent attached: That no person can be deprived of his property without due process of law, and that just compensation must first be made to the owner.   (Const., Art. III, secs. 14, 27.)   The subordination of the rights of the private proprietors goes no further.   Once the title has been acquired by the railway company, whether by purchase or condemnation, its use of it, as we have already said, must be governed by the same rules as that of private proprietors.   Otherwise the guaranties of the Constitution would be of no avail. In *Staton* v. *Norfolk & C. R. Co., supra,* it was well said: "It would be of small comfort to the ruined proprietor to be told that he must bear his loss for the benefit of the public, and it would not be unnatural if he answered that if the public good required the destruction of his property an enlightened sense of public justice should demand that he be compensated for his

loss.   In this he would be sustained by the words of Sir William
Blackstone that 'the public good is in nothing more essentially
interested than in the protection of every individual's private
rights.'   (1 Bl. Com. 138.)''

Counsel insist, however, that the water forced out of the main
[2]  channel of the river was surface water, that the defendant
had the right to treat it as a common enemy, and that any dam-
age caused by its release by blowing out the gorge was *damnum
absque injuria*.   In view of the decision by this court in *Ford-
ham* v. *Northern Pacific R. Co.*, 30 Mont. 421, 104 Am. St. Rep.
729, 66 L. R. A. 556, 76 Pac. 1040, it is somewhat surprising
that this contention should be made.   After a review of many
of the decisions on the subject, and, recognizing the diversity of
the views entertained by the courts as to what is and what is
not flood water, the court, through Mr. Justice Holloway, said:
''Without attempting to reconcile the diverse decisions, we are
of the opinion that the following rule furnishes the safest guide
for the determination of a question which has vexed the courts
of many of our states as well as those of England, *viz.:* Whether
the water from the overflow of streams is to be considered as
still a part of the watercourse, or to be treated as surface water,
shall depend upon the configuration of the country, and the
relative position of the water after it has gone beyond the usual
channel.   If the flood water becomes severed from the main cur-
rent, or leaves the same never to return, and spreads out over
the lower ground, it becomes surface water.   But if it forms a
continuous body with the water flowing in the ordinary channel,
or if it departs from such channel presently to return, it is to be
regarded as still a part of the stream.''   Further consideration
of the subject has convinced us that the rule as here expressed
is the only satisfactory one.   Taking it as the criterion, the char-
acter of the water, and therefore the extent of the right to deal
with it, must depend upon the facts as they are made to appear
in the particular case.   Mr. Farnham, in his work on Waters
(sections 879, 880), discusses the subject and expresses, in
substance, the same view.   The following authorities support it:

*Riddle* v. *Chicago, R. I. & P. R. Co.,* 88 Kan. 248, 128 Pac. 195; *Uhl* v. *Ohio River R. Co.,* 56 W. Va. 494, 107 Am. St. Rep. 968, 3 Ann. Cas. 201, 68 L. R. A. 138, 49 S. E. 378; *Clark* v. *Patapsco Guano Co.,* 144 N. C. 64, 119 Am. St. Rep. 931, 56 S. E. 858; *Town of Jefferson* v. *Hicks,* 23 Okl. 684, 24 L. R. A. (n. s.) 214, 102 Pac. 79; *Chicago etc. R. Co.* v. *Emmert,* 53 Neb. 237, 68 Am. St. Rep. 602, 73 N. W. 540; Lewis on Eminent Domain, 3d ed., 566, 838; 40 Cyc. 639.

Under the facts presented in this case, the water which left [3] the main channel above the gorge and finally rested against the embankment was flood water within the rule stated in *Fordham* v. *Northern Pacific Ry. Co., supra;* for while it was spread over the country between the embankment and the river, covering a large area, as soon as the gorge was removed and the way was opened for it, it immediately returned to the channel and became a part of the torrent which swept over and inundated the plaintiff's land, causing the injury of which he complains. While it may be conceded that it was the imperative duty of the defendant to protect the embankment from injury or destruction, the necessity for action gave it no right to turn the water resting against it upon the proprietors below, to their injury. And though it may be said that the condition was created by natural causes—was the act of God—it was not in any respect different from an ordinary flood caused by melting snow or excessive rainfall, and under the rule applied in the *Fordham Case,* the defendant must be held liable for the injury done. There is no question of negligence involved. The act of the defendant amounted to a direct violation of the plaintiff's property rights. (*Fitzpatrick* v. *Montgomery,* 20 Mont. 181, 63 Am. St. Rep. 622, 50 Pac. 416.)

The judgment and order are affirmed.

*Affirmed.*

MR. JUSTICE HOLLOWAY and MR. JUSTICE SANNER concur.