SYLVESTER, APPELLANT, *v.* ANACONDA COPPER MIN-
ING CO., RESPONDENT.

(No. 5,686.)

(Submitted May 22, 1925. Decided June 1, 1925.)

[236 Pac. 1067.]

*Surface Water—Wrongful Diversion—Evidence—Insufficiency
—Duty of Land Owner.*

Surface Waters—Wrongful Diversion—Evidence—Insufficiency.
    1.  Evidence, in an action for damages to plaintiff's property by sur-
face water alleged to have been diverted thereon during a severe
storm by the negligent acts of defendant company in theretofore con-
structing a flume and ditch in a gulch, from which it appeared that
defendant did no more than convey surface water which would natur-
ally flow down the gulch away from the watershed, and did not im-
pound water which afterwards escaped, *held* insufficient to warrant the
submission of the case to the jury.

Evidence—Based upon Impossibility of No Value.
    2.  Testimony based upon a physical impossibility is no testimony at
all.

Surface Waters—Testimony Based upon Conjecture—Insufficiency.
    3.  The effect of testimony that prior to the construction of a flume
and ditch by defendant storms of like severity as the one during
which the plaintiff suffered injury did no damage, was only to jus-
tify a suspicion or conjecture that but for the acts of defendant the
waters would not have done any damage,—insufficient to supply the
place of competent evidence necessary to a recovery.

Same—Duty of Land Owner.
    4.  An owner of land does not owe to an adjoining owner the duty
of preventing surface waters from flowing naturally from his land to
that of his neighbor, and where he had done so previously he was
not required to continue doing so.

Evidence, 23 C. J., sec. 1752, p. 19, n. 31.
Waters, 40 Cyc., p. 641, n. 17; p. 654, n. 84, 91.

*Appeal from District Court, Deer Lodge County; George B.
Winston, Judge.*

1.  Right of land owner to accelerate flow of water on to land of an-
other, see note in 85 **Am. St. Rep.** 707.
    Rights as to flow of surface water, see note in 21 **L. R. A.** 593 *et
seq.* See, also, 27 **R. C. L.** 1151.
2.  See 10 **R. C. L.** 1008.
4.  Right of and liability for injury of property by flowage, see note
in 57 **Am. Dec.** 684.

Action by Jennie Sylvester against the Anaconda Copper Mining Company. Judgment of nonsuit and plaintiff appeals. Affirmed.

*Messrs. Keeley & Keeley,* for Appellant, submitted a brief; *Mr. W. E. Keeley* argued the cause orally.

The only question involved is the law pertaining to surface waters. In granting the motion for nonsuit, the court misapplied the law applicable to the facts in this case. Plaintiff has at all times admitted, and now does admit, that the defendant had the right (in the absence of some act of plaintiff to divert same) to have its surface waters flow naturally to and upon the lands of plaintiff, if such waters would so flow without artificial collection, diversion or increase in flow or volume. But plaintiff contends (and all the authorities sustain this contention) that the defendant was liable if it negligently changed the natural flow of ·such surface waters to plaintiff's detriment. (40 Cyc. 645–648; 27 R. C. L., secs. 79–81, 85, 87, 88; *Whiteside* v. *Benton County,* 114 Wash. 463, 195 Pac. 519; *Johnston* v. *Hyre,* 83 Kan. 38, 109 Pac. 1075; *Incorporated Town of Idabel* v. *Harrison,* 42 Okl. 469, 141 Pac. 1110; *Kroeger* v. *Twin Buttes R. Co.,* 14 Ariz. 269, Ann. Cas. 1914A, 1289, 127 Pac. 735; *Wood* v. *Moulton,* 146 Cal. 317, 80 Pac. 92; *La Fetra* v. *Richardson,* 44 Cal. App. 302, 186 Pac. 396; *Boynton* v. *Longley,* 19 Nev. 69, 3 Am. St. Rep. 781, 6 Pac. 437.)

*Mr. L. O. Evans, Mr. D. M. Kelly, Mr. John V. Dwyer, Mr. R. O. Kerr* and *Mr. H. W. Rodgers,* for Respondent, submitted a brief; *Mr. Dwyer* argued the cause orally.

"The owner of land may, by the common law, erect a barrier upon it to prevent the influx of surface water whether collected in artificial channels or not, and if such water is set back or turned aside upon the land of another, to his injury, it affords no cause of action." (Gould on Waters, 3d ed.,

Chap. 275, p. 552; see, also, *Cass* v. *Dicks,* 14 Wash. 75, 53
Am. St. Rep. 859, 44 Pac. 113; *Shaw* v. *Ward,* 131 Wis. 646,
11 Ann. Cas. 1139, 111 N. W. 671; *Johnson* v. *Leazenby,* 202
Mo. App. 232, 216 S. W. 49; *Harvey* v. *Northern Pac. Ry. Co.,*
63 Wash. 669, 116 Pac. 464; *Jacks* v. *Lollis,* 10 Ind. App. 700,
37 N. E. 728; *Jean* v. *Pennsylvania Co.,* 9 Ind. App. 56, 36
N. E. 159; *Cairo & V. R. Co.* v. *Stevens,* 73 Ind. 278, 38
Am. Rep. 139; *Gannon* v. *Hargadon,* 10 Allen (Mass.), 106,
87 Am. Dec. 625; *Bowlsby* v. *Speer,* 31 N. J. L. 351, 86
Am. Dec. 216; *Johnson* v. *Chicago etc. Ry. Co.,* 80 Wis. 641,
27 Am. St. Rep. 76, 14 L. R. A. 495, 50 N. W. 771; *Rielly*
v. *Stephenson,* 222 Pa. St. 252, 70 Atl. 1097; *Lessard* v. *Stram,*
62 Wis. 112, 51 Am. Rep. 715, 22 N. W. 284; *Campbell* v.
*Flannery,* 29 Mont. 246, 74 Pac. 450; *Le Munyon* v. *Gallatin
Valley Ry. Co.,* 60 Mont. 517, 199 Pac. 915.)

MR. JUSTICE MATTHEWS delivered the opinion of the
court.

This is an appeal from a judgment of nonsuit entered in an
action brought to recover for the damage done by surface
waters alleged to have been diverted to plaintiff's property
by the negligent acts of defendant.

The only question presented is as to whether the evidence
adduced by the plaintiff establishes a duty owing by defend-
ant to plaintiff and a breach of that duty. This evidence
shows that ever since the year 1888 the plaintiff has been
the owner and in possession of two lots, with the improve-
ments thereon, situated near the head of Ash Street in the
city of Anaconda; that, approximately 100 feet above the
premises, Ash Street ends at the foot of a precipitous moun-
tainside; that this mountainside is bisected by a deep gulch,
its apex at the head of Ash Street, from which it widens into
a fan-shaped basin, the entire natural drainage of which is
through this apex; that prior to 1900 some timber grew upon
the slopes of the basin, or sides of the gulch, but was removed

by parties undisclosed; that in 1901 and 1902 defendant con-
structed an aqueduct from Warm Spring Creek to its reduc-
tion works and, as a part thereof, erected across the basin,
at a point approximately 300 feet from plaintiff's prop-
erty and at an elevation of 100 feet above it, a flume sup-
ported by a trestle; that for the protection of the trestle de-
fendant constructed a shallow ditch parallel to the flume, and
immediately above it and extending across at least a part of
the basin, through its lower or east rim and thence to an
adjoining gulch, and immediately under the flume it floored
the bed of the gulch to prevent the undermining of the tim-
bers of the trestle by·water. The evidence further discloses
that on July 11, 1918, a severe storm occurred on the moun-
tainside and a large volume of water, collected from all points
of the basin both above and below the flume, flowed down
the gulch and to and upon plaintiff's premises, causing con-
siderable damage.

Witnesses testified that prior to the construction of the flume
storms as severe as this one had caused no damage; that in
1911 damage had been done by a storm and the company
notified, but that it failed to do anything to prevent a recur-
rence of damage. It was also shown that, prior to the con-
struction of the flume, the center of the gulch was not washed
out, but that in recent years it had washed, in places, to bed-
rock.

In support of the judgment, counsel for defendant urge that
it is not shown that any act of defendant company was the
proximate cause of the damage complained of, but that, on
the contrary, the evidence shows that the waters flowed just
as they would have, naturally, had defendant maintained no
flume or ditch in the gulch or basin, and that, assuming, but
not admitting, that the erection of the flume and construction
of the ditch in the regular course of its business did divert
surface water to and upon plaintiff's premises, which would
not otherwise have flowed there, there would be no liability;
they digest numerous cases decided under both the civil and

common-law rule, but state that it is not necessary to go beyond the decisions of our own court in order to establish the rule for which they contend, citing *Campbell* v. *Flannery,* 29 Mont. 246, 74 Pac. 450, and *Le Munyon* v. *Gallatin Valley Ry. Co.,* 60 Mont. 517, 199 Pac. 915.

Plaintiff's counsel contends that the defendant is liable, if it negligently changed the natural flow of surface water, either in its course or volume, to the detriment of plaintiff—citing, among other cases, *Fordham* v. *Northern Pac. Ry. Co.,* 30 Mont. 421, 104 Am. St. Rep. 729, 66 L. R. A. 556, 76 Pac. 1040, and *Wine* v. *Northern Pac. Ry. Co.,* 48 Mont. 200, Ann. Cas. 1915D, 1102, 49 L. R. A. (n. s.) 711, 136 Pac. 387, but expressly admits in his brief "that the defendant had the right to have surface water flow from its lands to those of the plaintiff, if such water would so flow without artificial collection, diversion or increase in volume."

We are, however, not called upon to determine the question [1]   of the liability, or the extent thereof, of one land owner to another for the diversion of surface water, for the following reasons:

From the evidence it does not appear that the shallow ditch above the flume collected any water which would not flow naturally down the gully; it did not impound water which afterwards escaped, but merely conveyed surface water, which would naturally flow down the gully, away from the watershed.  While it appears that at times the flume was broken, it was not shown, nor is it contended, that one drop of water from the flume was added to the water flowing down the gully on July 11, 1918.  While it appears that the center of the gully had been eroded by water since the construction of the flume, no attempt was made to show what caused this condition, except possibly the breaking of the flume, and it does not appear that this condition had any effect upon the flow or volume of water on the day in question.  All of the water falling in and upon the basin naturally flowed into and down

the gully, except as prevented by the shallow ditch, and any escaping water would naturally have so flowed.

W. T. Sylvester, plaintiff's husband, testified that "the water that came in from both sides up above the shallow ditch would naturally flow down through the center and through that overflow flume and on down the hill." That being the undisputed fact, the only act of defendant which could have constituted negligence on its part is the construction and maintenance of the overflow flume in such a manner as to cast an additional burden upon plaintiff. In an attempt to show negligence in this particular, the plaintiff testified: "They made a platform or ditch underneath that flume to convey the water that came down from that ditch under the flume to bring it right down the hill on to my place." This statement, standing alone, tends to show that the ditch and overflow flume collected surface water, diverted it from its natural [2] channel and discharged it *en masse* upon plaintiff's premises. But that such was the fact is physically impossible. The shallow ditch referred to paralleled the big flume and crossed the basin and gully at right angles, carrying such water as flowed into it away from the watershed, and such water as escaped therefrom would have flowed down the gully and on to plaintiff's premises, had the ditch not been constructed, and a "platform" or flume, twelve by fourteen feet square at the most, set in the bottom of a deep ravine, could not possibly have any effect upon the volume of water discharged at the mouth of the ravine, nor upon the direction the water would take 300 feet below such platform or flume. This testimony, being based upon an impossibility, is in effect no testimony whatever. (*Nelson* v. *Big Blackfoot Mill. Co.,* 17 Mont. 553, 44 Pac. 81.)

That storms of like severity, prior to the construction of the flume and ditch, as testified to by plaintiff's witnesses, did no [3] damage, might justify the suspicion or conjecture that the defendant had, in some manner, changed the physical con-

ditions in the basin, but such fact, if proven, cannot, in the absence of some act or omission on the part of the defendant bringing about that condition, aid the plaintiff. "Competent evidence must be produced of all facts necessary to a recovery, upon which the jury can base a reasonably reliable conclusion; nothing can be left to mere conjecture." (*Watson* v. *Colusa-Parrot Co.,* 31 Mont. 513, 79 Pac· 14.)

The result, then, of all of the testimony adduced was merely a showing that, by reason of a severe storm, large quantities of water converged, from all points of the natural basin on the mountainside, in, and flowed down the natural waterway to and upon, the premises of the plaintiff, regardless of any act or omission of the defendant.

If, therefore, plaintiff was entitled to have the case submitted to the jury, it could have been only on the theory that defendant owed to plaintiff the duty of preventing surface water from flowing naturally from its lands to and upon her lands—a theory expressly repudiated by her counsel and in direct conflict with the declaration of this court in the case of *Le Munyon* v. *Gallatin Valley Ry. Co.,* cited above, to-wit: "The defendant owed no obligation to the plaintiff in the protection of the latter from the encroachment of such waters."

The fact that defendant company had, in past years, to [4] some extent so protected plaintiff by diverting surface waters to an adjoining gulch does not change the rule nor impose upon the defendant a duty to continue so to do.

"Actionable negligence arises only from a breach of a legal duty, and, to state a cause of action for damages resulting from negligence, it is necessary that the complaint disclose the duty, the breach, the resulting damages, and that the breach of duty was the proximate cause of the injury." (*Grant* v. *Nihill,* 64 Mont. 420, 210 Pac. 914.) Having alleged these elements of her cause of action, it was, of course, incumbent upon the plaintiff to produce the evidence to prove these ma-

terial allegations of her complaint, and, having failed to do so, judgment of nonsuit was properly entered.

The judgment is affirmed.

*Affirmed.*

ASSOCIATE JUSTICES HOLLOWAY, GALEN and STARK concur.

MR. CHIEF JUSTICE CALLAWAY, being absent on account of illness, did not hear the argument and takes no part in the foregoing decision.